STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JOHN
BAYLASS, DEFENDANT–APPELLANT.

Argued September 14, 1988—Decided February 7, 1989.

*Susan T. Sinins,* Assistant Deputy Public Defender, argued the cause for appellant (*Alfred A. Slocum,* Public Defender, attorney).

*Annmarie Cozzi,* Deputy Attorney General, argued the cause for respondent (*Cary Edwards,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

Pursuant to a plea agreement, defendant, John Baylass, was convicted of three counts of forgery and was placed on probation. He violated the terms of his probation, and the trial court converted defendant's status from non-incarceration to incarceration for four and one-half years with a parole disqualifier of two years and three months.

The Appellate Division affirmed the sentence after hearing the matter as part of the Excessive Sentence Oral Argument Program. We granted defendant's petition for certification, 111 *N.J.* 561 (1988), and now reverse and remand the matter to the Law Division. We hold that a violation of probation relates to mitigating, not aggravating, factors as identified at a defendant's original sentencing hearing. Except insofar as the probation violation affects the weight to be accorded to mitigating factors, the violation may not be used to impose a prison term greater than the presumptive sentence or a period of parole

ineligibility. Nor should probation violations be used to justify the imposition of consecutive sentences.

I

Defendant was indicted on three counts of forgery, *N.J.S.A.* 2C:21–1(a), a fourth-degree offense, and theft by deception, *N.J.S.A.* 2C:20–4, a second-degree offense. The underlying facts were that over two consecutive days defendant cashed at a bank three forged checks totaling $522.43. He pled guilty to the three forgery counts. In exchange, the State dismissed the theft charge and recommended that defendant receive three concurrent five-year probationary terms.

At the sentencing hearing on June 20, 1986, the trial court approved the recommended sentence, and admonished defendant that if he violated the terms of his probation, the court could resentence him on each count to the maximum term of eighteen months with a nine-month period of parole ineligibility, require that the terms run consecutively, and impose a $7500 fine. The court warned the defendant that

> in the opinion of the court, you, sir, are heading for a serious involvement with the criminal justice system. You have seven prior municipal convictions, you have received fines, probations, short jail terms but, apparently, you have not been convinced that violating the law is serious business. You are getting one more chance by reason of the graciousness of the prosecutor.

The court then sentenced defendant to five years' probation, 200 hours of community service, restitution of $410.43, and a $90 violent crime penalty. At some later time, remaining drug-free apparently became a further condition of defendant's probation.

Thereafter defendant was charged with violating the terms of his probation. On December 12, 1986, the trial court sustained the charges, finding that defendant had failed to keep three appointments with his probation officer and had continued to use drugs. At the hearing on the probation violations, the court focused on defendant's drug use. Defense counsel sought to explain defendant's conduct by stating that defend-

ant's problem "all along" was his heroin addiction. In response to defendant's assertion that he "wanted help," the court stated, "I'll give you help. Give you a lot of help." Referring to the fact that defendant lived at home with his parents, the court continued, "[i]t's bad enough he lives at their home and they have to feed him, a man of twenty-five years of age. I find that he's an absolute disgrace to the community, to mankind." In determining the length of defendant's sentence, the court focused on defendant's drug use, stating:

I can't conceive of a more violent—violation of probation than the continuous use of heavy drugs. He claims that he's been unable to do his community service. Well, obviously he's been too busy taking drugs.

* * * * * * * *

When I look at the need here for punishment and deterrence, there is a substantial need to punish him for his criminal activity and to deter him from not only future criminal activity, but the use of drugs * * *.

The court thereupon imposed three consecutive eighteen-month sentences, the maximum term for a fourth-degree offense, with a nine-month parole disqualifier on each term. According to the court, three consecutive sentences were necessary to help the defendant "rid himself of this evil chemical dependency."

## II

Sentencing under the New Jersey Penal Code (the Code) is offense oriented. The penalty should fit the crime. *See, e.g.,* *State v. Hodge*, 95 *N.J.* 369, 377 (1984). That principle applies not only when the defendant first appears for sentencing, but also if he or she is placed on probation and subsequently returns to court because of a probation violation. In both contexts, it is the Code, not the judge's predilections, that controls the exercise of judicial discretion. Under the Code, however, the role of the court when sentencing a defendant is different from the court's role when reviewing a probation violation. Although the first decision in each context is whether the defendant should be incarcerated, the weighing process in the two contexts differs.

To explain the differences, we begin with a summary of the Code's sentencing provisions. Various alternatives are available to a court when initially sentencing a defendant. In general, the court may incarcerate the defendant, *N.J.S.A.* 2C:43-2b(3), in which event the court is constrained by the sentencing ranges, *N.J.S.A.* 2C:43-6, and the presumptive sentences of the Code, *N.J.S.A.* 2C:44-1f. Alternatively, the court may place the defendant on probation. *N.J.S.A.* 2C:43-2b(2).

A presumption of imprisonment applies to an offender who commits a crime of the first or second degree. *N.J.S.A.* 2C:44-1d. Conversely, a first offender who commits a crime other than one of the first or second degree is entitled to a presumption of non-incarceration. *N.J.S.A.* 2C:44-1e. When neither presumption applies, the court must weigh the aggravating and mitigating factors of *N.J.S.A.* 2C:44-1a and b to determine whether a probationary or custodial sentence is appropriate. *See State v. Powell,* 218 *N.J.Super.* 444, 451 (App.Div.1987). If the court determines to incarcerate the defendant, the presumptive custodial sentences of *N.J.S.A.* 2C:44-1f(1) apply "unless the preponderance of aggravating or mitigating factors, as set forth in [*N.J.S.A.* 2C:44-1a and b], weigh in favor of a higher or lower term within the limits provided in *N.J.S.A.* 2C:43-6." When the court is "clearly convinced" that the aggravating factors "substantially outweigh" the "mitigating factors," it may impose a period of parole ineligibility. *N.J.S.A.* 2C:43-6b. Furthermore, if the defendant has committed more than one offense, the court should also determine whether the sentences are to be consecutive or concurrent. *N.J.S.A.* 2C:44-5a. Insofar as a probationary sentence is concerned, the court may place the defendant on probation without requiring incarceration, *N.J.S.A.* 2C:43-2b(2), or it may condition probation by a term of incarceration up to 364 days in the county jail, *ibid.*

We have previously explained the need for courts to set forth their reasons when imposing a period of ineligibility in conjunction with a presumptive sentence, *State v. Kruse,* 105

*N.J.* 354, 362 (1987), and when imposing consecutive or concurrent sentences, *State v. Yarbough,* 100 *N.J.* 627, 643 (1985). Similarly, when the defendant is not entitled to a presumption of non-incarceration, the court should identify the aggravating and mitigating factors and explain why the balance tips in favor of probation. Otherwise, it will be virtually impossible to ascertain why the court concluded that probation is the appropriate sentence.

In the present case, the court started off on the wrong foot at the original sentencing hearing by failing to indicate why the mitigating factors weighed in favor of probation. *Cf. State v. Sainz,* 107 *N.J.* 283, 292 (1987) (sentences imposed pursuant to plea agreements must "still be within the sentencing guidelines, and the aggravating and mitigating factors found must still have support in the record"). As this case makes clear, the initial weighing of aggravating and mitigating factors is crucial for resentencing a defendant who violates probation. Unless the court identifies and balances the aggravating and mitigating factors at the original sentencing hearing, it will be difficult, if not impossible, for the court to resentence the defendant to a custodial term that suits the original offense. In the future, a court at an initial sentencing hearing should identify and weigh the aggravating and mitigating factors that lead to the sentencing decision.

When a court places a defendant on probation, "it shall attach such reasonable conditions * * * as it deems necessary to insure that he will lead a law-abiding life or is likely to assist him to do so." *N.J.S.A.* 2C:45–1a. The "inexcusable failure" of a defendant "to comply with a substantial requirement imposed as a condition" may lead to the revocation of probation and resentencing of the defendant. *N.J.S.A.* 2C:45–3a(4). Thus, a probation violation, although it has no bearing on the original sentence, may affect the later "in-out" decision whether to incarcerate the defendant.

With respect to a defendant who violates a probationary condition, the initial question is whether the violation justifies revocation of probation. Some violations are more serious than others. Once the court concludes that incarceration is required, "it may impose on the defendant any sentence that might have been imposed originally for the offense for which he was convicted." *N.J.S.A.* 2C:45–3b. Any such sentence must be consistent with the sentencing guidelines including the presumptive sentences, *N.J.S.A.* 2C:44–1f(1), and sentencing ranges, *N.J.S.A.* 2C:43–6a. As at the original sentencing, the court may consider whether to increase or decrease the presumptive sentence, whether to impose a period of parole ineligibility, and if defendant has committed more than one offense, whether the sentences should run concurrently or consecutively.

The State contends that the court should consider probation violations as evidence of aggravating factors when resentencing the defendant. Any such procedure, however, contains the seeds of a sentencing anomaly. To illustrate, when identifying and balancing aggravating and mitigating factors at the initial sentencing hearing of a defendant who is not entitled to a presumption of non-incarceration, the court is necessarily restricted to aggravating factors pertaining to the original offense. The court is so restricted not only in determining whether to incarcerate defendant but also in determining the length of any custodial sentence. If a probation violation could be considered as an aggravating factor, the sentence imposed after that violation could be longer than the one to which the defendant was exposed when originally sentenced. The reason is that the subsequent sentence would entail consideration of defendant's probation violations as new aggravating factors. The longer prison term would result from the defendant's failure to fulfill the terms of probation, a result that breaches the rule that sentences should be oriented toward the offense, not the offender.

A further problem arises when the facts that give rise to the probation violation also constitute a separate criminal offense. The State contends that the commission of such an offense could be relevant as an aggravating factor by itself or as evidence of the risk that defendant will commit another offense, *N.J.S.A.* 2C:44–1a(3), or of the need to deter the defendant from violating the law, *N.J.S.A.* 2C:44–1a(9). Ordinarily, however, the defendant will not have been tried for the underlying crime before it is considered as evidence of a probation violation. Penalizing the defendant twice for acts that constitute both a probation violation and a criminal offense raises double-jeopardy and other constitutional concerns.

█ Probation violations serve a different function from aggravating factors; as actions that conflict with a defendant's probationary status, the violations may justify the revocation of probation. *N.J.S.A.* 2C:45–3a(4). As Judge King has written,

> [v]iolation of probation means a failure of non-custodial rehabilitation. It does not necessarily suggest aggravating circumstances regarding the original offense mandating an enhanced punishment scheme. Failure to report while on probation, illegal drug use, and failure to perform community service, are not truly 'aggravating factors' under *N.J.S.A.* 2C:44–1. They are circumstances to support the adjudication of a violation.
>
> [*State v. Smith*, 226 *N.J.Super.* 276, 280 (App.Div.1988), *certif. denied*, —— *N.J.* —— (1989); *State v. Wilson*, 226 *N.J.Super.* 271, 276 (App.Div.1988), *certif. denied*, —— *N.J.* —— (1989).]

In the present case, defendant's probation violations—illegal drug use and failure to report to his probation officer—are neither aggravating factors nor evidence of those factors. Generally, aggravating factors concentrate on the circumstances surrounding the commission of the original offense and serve to distinguish that offense from other similar offenses. *State v. Yarbough*, 195 *N.J.Super.* 135, 143 (App.Div.1984), *remanded*, 100 *N.J.* 627 (1985). Once the court decides to impose a custodial sentence, it must again weigh the aggravating and mitigating factors to determine whether to impose the presumptive sentence or one that is more appropriate. The only aggravating factors the court may consider are those that existed at the time of the initial sentencing.

■ The appropriate place for consideration of a defendant's character and amenability to probation is not in the weighing of the aggravating, but of the mitigating, factors. Certain mitigating factors reflect on defendant's amenability to serve his or her sentence as a lawful member of society. Those factors include defendant's ability to lead a law-abiding life, *N.J.S.A.* 2C:44–1b(7), and the likelihood that he or she will respond affirmatively to probation treatment, *N.J.S.A.* 2C:44–1b(10). A defendant who violates probation demonstrates his or her inability to live lawfully and to respond positively to probation. The violation may also relate to "[t]he character and attitude of the defendant" as indicating "that he is unlikely to commit another offense." *N.J.S.A.* 2C:44–1b(9). We recognize that this mitigating factor overlaps with "[t]he risk that defendant will commit another offense," the aggravating factor set forth in *N.J.S.A.* 2C:44–1a(3). Here, as in other instances, a probation violation might be viewed as relating to both an aggravating and a mitigating factor. We believe it is more consistent with the Code's sentencing scheme, however, to consider the effect of the probation violation on the relevant mitigating, but not the aggravating, factors.

In the present case, the trial court did not relate its reasons for placing defendant on probation to the terms of the Code. As previously mentioned, first offenders who commit crimes other than those of the first or second degree are entitled to a presumption of non-incarceration unless "having regard to the nature and circumstances of the offense and the history, character and condition of the defendant, [the court] is of the opinion that his imprisonment is necessary for the protection of the public [under the aggravating factors]." *N.J.S.A.* 2C:44–1e. When the presumption does not apply, the court should weigh the aggravating and mitigating factors in determining whether to incarcerate the defendant or to place him or her on probation. Here, the trial court's recitation of defendant's prior record suggests that it concluded that the presumption did not apply, but the court did not explain why the balance tipped in

favor of probation. From the record, the primary reason for placing the defendant on probation appears to be that it was the result sought by the prosecutor. Hence, we cannot be certain that the court concluded that the mitigating factors outweighed the aggravating factors.

Once the court determines that the violation justifies revocation of probation, the Code controls the sentencing decision. Specifically, the term of imprisonment should not exceed the presumptive sentence unless the aggravating factors preponderate over the mitigating factors. *N.J.S.A.* 2C:44-1f(1). In weighing those factors, the court should consider the aggravating factors found to exist at the original hearing and the mitigating factors as affected by the probation violations. We anticipate that it will be a rare case in which the balance of the original aggravating factors and surviving mitigating factors weigh in favor of a term of imprisonment greater than the presumptive sentence or of a period of parole ineligibility. *See Kruse, supra,* 105 *N.J.* at 362.

With respect to a fourth-degree offense, to impose a sentence higher than the presumptive nine months, the aggravating factors must preponderate over the mitigating factors. *N.J.S. A.* 2C:44-1f(1)(e). For the court to attach a parole disqualifier, the aggravating factors must substantially outweigh the mitigating factors. *N.J.S.A.* 2C:43-6b. Such results ordinarily should not follow when, at the original sentencing, the court concluded that the mitigating factors weighed in favor of probation. *Cf. Kruse, supra,* at 361-62 (in light of higher standard of proof to warrant imposition of parole disqualifier, court should rarely impose such a disqualifier in conjunction with a presumptive sentence).

### III

In the present case, the court failed to follow the correct procedure when resentencing defendant at the probation violations hearing. The court related defendant's drug use not to any mitigating factor, but to the need to deter defendant from

continuing that use. As previously explained, the proper use of a probation violation is in connection with certain mitigating factors, such as the likelihood that defendant will respond affirmatively to probation or the unlikelihood that defendant, because of his or her character and attitude, will commit another offense. This misuse of the probation violations led the court to the further error of weighing as an aggravating factor the need for deterrence as of the date of the probation violations hearing, rather than as of the date of the original sentencing. In this regard, the court stated that there were ways to deter defendant from using drugs, "and one way is to take a person and remove them from the possibility of utilizing drugs. And I'm sure in state prison they have programs for persons such as this gentleman, and he will be motivated, I presume, to engage in those programs." By emphasizing the potential rehabilitative effect of incarceration, the court departed from the Code's mandate to forego defendant's capacity for rehabilitation and to concentrate on fitting the penalty to the crime. *Hodge, supra,* 95 *N.J.* at 378–79.

To impose a period of parole ineligibility, a court must be clearly convinced that the aggravating factors substantially outweigh the mitigating factors. *N.J.S.A.* 2C:43–6b. Here, however, when imposing twenty-seven months of parole ineligibility, the court failed to conduct this necessary balancing of aggravating and mitigating factors. In proclaiming the need to punish defendant for his criminal activity, the court seemed bent more on implementing its own sentencing philosophy than that of the Code.

On remand, the court should consider the impact of the probation violations on the "in-out" decision. If it decides to incarcerate defendant, the court might further consider the probation violations to the extent of determining whether they diminish or negate any mitigating factors found to exist at the original sentencing. The court, however, should not weigh defendant's drug addiction as evidence of an aggravating factor. On the record before us, we doubt that the weighing of

aggravating and mitigating factors would support either the maximum term or a parole disqualifier.

 The trial court erred also in sentencing defendant to consecutive rather than concurrent sentences. In *Yarbough,* we set forth the now familiar criteria for determining whether sentences should be consecutive or concurrent. 100 *N.J.* at 643–44. For our purposes, we need not repeat those criteria; it suffices to note that they generally concentrate on such considerations as the nature and number of offenses for which the defendant is being sentenced, whether the offenses occurred at different times or places, and whether they involve numerous or separate victims. *Ibid.* The *Yarbough* criteria conclude by placing an outer limit on "consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses." *Id.* at 644. As we have explained,

> [w]here the offenses are closely related, it would ordinarily be inappropriate to sentence a defendant to the maximum term for each offense and also require that those sentences be served consecutively, especially where the second offense did not pose an additional risk to the victim. The focus should be on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted.
>
> [*State v. Miller,* 108 *N.J.* 112, 122 (1987).]

In sum, a sentencing court ordinarily is limited to the two longest and strongest sentences.

Here, however, the trial court imposed three consecutive terms, a decision it sought to substantiate by reference to defendant's drug dependency. The court explained that

> eighteen months in state prison, which are two consecutive nine months without parole, is not enough to help this man rid himself of this evil chemical dependency that he has. I think it's necessary, and to do him a service, that he have more time to rid himself of this evil chemical dependency. And for that reason, I elect, therefore, to sentence him on count three to eighteen months, nine without parole, consecutive to count two. Recognizing that I'm satisfied there's a reason for the exception, as expressed in State versus Yarbough.

This was error. The *Yarbough* criteria center on the circumstances surrounding the offense, but the trial court focused on something else, defendant's subsequent drug use. In so focusing, the court's attention was diverted from the offense to the

offender. Finally, the court did not explain, and we cannot discern, why this case is "so extreme and so extraordinary that deviation from the [*Yarbough*] guidelines may be called for." 100 *N.J.* at 647.

In the future, courts should set forth the reasons for initially granting probation to a defendant. At a probation violation hearing, the court should identify and weigh the original aggravating and surviving mitigating factors that lead them to deviate from the presumptive sentence. *Cf. Kruse, supra,* 105 *N.J.* at 362. At that hearing, the court should relate the effect of the violation to the weighing process conducted at the original sentencing. Furthermore, the court should state the reasons for revoking probation and imposing a custodial sentence. *See Kruse, supra,* 105 *N.J.* at 362; *Yarbough, supra,* 100 *N.J.* at 643. That exercise will illuminate the sentencing decision and further the legislative goals of uniformity and predicability in sentencing.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, O'HERN, POLLOCK, GARIBALDI and STEIN—7.

*For affirmance*—None.