850 A.2d 516 (2004)
369 N.J. Super. 610
STATE of New Jersey, Plaintiff/Respondent,
v.
Simmone N. IKERD a/k/a Simmone Holloway, Defendant/Appellant.[1]
Superior Court of New Jersey, Appellate Division.
Submitted February 10, 2004.
Decided June 14, 2004.
*517 Yvonne Smith Segars, Public Defender, attorney for appellant (J. Michael Blake,
*518 Assistant Deputy Public Defender on the brief).
Peter C. Harvey, Attorney General, attorney for respondent (Judson H. Hamlin, Assistant Prosecutor, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and PAYNE.
The opinion of the court was delivered by
PAYNE, J.A.D.
We hold in this appeal that a pregnant, drug-addicted woman who has violated the conditions of her probation cannot be sentenced to prison for the avowed purpose of safeguarding the health of her fetus. To have done so is contrary to law and constituted an abuse of discretion.
The facts follow: On January 29, 1998, defendant Simmone Ikerd pled guilty to one count of third-degree theft by deception (welfare fraud), N.J.S.A. 2C:20-4. It was her first indictable conviction. Ikerd was sentenced on March 16 of that year to a five-year period of probation, conditioned upon entry into and completion of drug treatment and restitution of $2,675 at the rate of $25 per month, payable through probation, as well as payment of a VCCB penalty of $50 and a SNSF assessment of $75 at the rate of $5 per month. The sentencing judge found the need to deter defendant and others from violating the law as the sole aggravating factor relevant to Ikerd's sentence. See N.J.S.A. 2C:44-1a(9). He found no mitigating factors.
On February 14, 2003, Ikerd appeared before a different judge as the result of a reported violation of probation (VOP). At the time, she had paid only nineteen or twenty dollars in restitution and allegedly had been noncompliant with other probationary conditions. She remained drug-addicted, but she stated that she was undergoing drug treatment through a methadone clinic.
Ikerd had been arrested approximately two to three weeks before the February hearing when she was eight weeks pregnant, and initially had been confined to the Middlesex County Adult Correctional Facility. However, because of her pregnancy, she was transferred to Robert Wood Johnson Hospital for a period of two weeks in order to obtain access to methadone, which was not available in the jail. The hospitalization may also have been required to treat Ikerd's severe asthma. Although Ikerd had appeared in court on multiple occasions (the judge counted thirty-five or thirty-eight), her probation records disclose that this was her third VOP, and that one of the two prior violations had been withdrawn.
At the time of the February hearing, Ikerd was eleven weeks pregnant, a fact that she confirmed upon questioning by the judge. Although there had been some concern regarding the condition of her fetus, hospital tests had found that it remained viable. Ikerd sought continuation of her probation so that she could attempt to finish her drug treatment; the State requested incarceration in State prison because of the risk to both mother and fetus from drug abuse. The prosecutor argued: "There is nothingno conditions of probationthat will help Miss [Ikerd] away from her addiction, help the life of her baby, and they will both be at risk."
The judge characterized Ikerd's situation as creating a "dilemma." She had acknowledged that she desired her present pregnancy. Yet, according to a doctor who had written to the court regarding Ikerd's treatment and condition, methadone maintenance was necessary to the preservation of that pregnancy, and, as the judge recognized, it was not available in county jail. Medical treatment in a hospital *519 setting, the judge observed, would cause "[t]he taxpayers to pay out a fortune." However, if Ikerd's probation were continued, there was no assurance that she would seek the high-risk pre-natal care that had been recommended as medically necessary. The judge believed that only place where Ikerd's addiction and the health of her fetus could be adequately addressed was the Edna Mahan Correctional Facility. He observed:
I dare say, that there isn't a person in this group, who has a personal opinion, you know, put her in jail. Not because we want to punish her; but because we want to save the baby. Because we know, once we release her on the street, she's going to kill herself, she's going to kill the baby, if she doesn't kill herself. It's only because she's developed a tolerance that is beyond words. Because this bright lady, this educated lady, who is a public employee for years, is going to use drugs no matter what we do.
So, we all agree. But how can I ignore the fact that she is pregnant?
After further discussing options with the probation officer, prosecutor and defense counsel participating in the hearing, the judge observed that he did not "feel comfortable" placing Ikerd in county jail. He then directed defense counsel to discuss punishment with Ikerd, stating:
If you want to make my weekend, tell me that Miss Ikerd said, "Judge, sentence me to the minimum amount of time at Edna Mahan, so I know that this child can be born." Please do that. Tell me that she wants to go to jail, so she can save the baby.
Ikerd responded through her counsel that she sought "mercy from the Court" and that she was "asking for the minimum time at Edna Mahan State Prison."
A factual basis for the VOP was established, consisting of Ikerd's acknowledgment of a urine test that was positive for opiates on March 30, 2001, failure to pay "fines" in the approximate amount of $3,000, and failure to cooperate with prenatal testing that had been scheduled at a local hospital on March 23, 2001, a condition imposed by the probation department after the inception of the present pregnancy. We note that "[n]o revocation of suspension or probation shall be based on failure to pay a fine or make restitution, unless the failure was willful." N.J.S.A. 2C:45-3a(4). The willfulness of Ikerd's conduct was not established in connection with her plea. We note as well that Ikerd asserted a defense in connection with her failure to obtain pre-natal testing, stating that she had to leave the testing site on the date in question to take her daughter, who was ill with a streptococcal throat infection, to the doctora defense that was apparently rejected by the judge, who remarked: "I'll accept her position. I'm going to impose a guilty finding based on that." The court thereupon found a sufficient factual basis to permit acceptance of Ikerd's "plea of guilty."
An extended discussion then occurred regarding sentencing. The fact that Ikerd had 261 days of jail credits created a problem in the judge's view. "If I sentence her to three years, with 261 days credit, and not a whole lot of criminal record in her background, she might be released in two or three months. Then where are we? She wants the baby." The prosecutor suggested the imposition of a period of parole ineligibility, to which the court agreed, with thanks. The judge stated:
Under the circumstances, what I'm going to do is sentence Miss Ikerd ... to a three-year term. I am satisfied that the aggravating factor of the risk she will commit another offense is present. She does not have an extensive prior criminal history. The need to deter *520 her and others from violating the law. There are really no mitigating factors that I see. I will add to that reason, the fact that she has showed a disinclination to cooperate with probation in any respect.
So, I'm satisfied[2] that the aggravating factors substantially outweigh the mitigating factors. I am going to sentence her to a three-year term, with an 18-month period of parole ineligibility. And 261 days credit.
Now, Mr. Fleming [defense counsel], if she loses the baby, if there is a problem, and she has the baby, I'll consider, since this is a Violation of Probation, any application that you wish to make at that time.... But the point is, I want to keep her off the street. I don't want her using drugs. The only way I can do it is by putting her in jail.
Ikerd appealed her sentence and, after a preliminary hearing as part of our Excessive Sentence Oral Argument Program, we requested further briefing of the issues raised by the court's sentencing procedures and decided to consider the matter in a plenary decision. Before this appeal was argued, Ikerd gave birth to a healthy child and was released from prison.

I.
The State argues in opposition to this appeal that it has been mooted by Ikerd's release from custody. We disagree, finding the issues presented to be of substantial importance, to be capable of repetition, and yet to be likely to otherwise evade review. Roe v. Wade, 410 U.S. 113, 124-25, 93 S.Ct. 705, 712-13, 35 L.Ed.2d 147, 161 (1973).
[W]hen, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid. Pregnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us. Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be "capable of repetition, yet evading review."
[Id. 410 U.S. at 125, 93 S.Ct. at 713, 35 L.Ed.2d at 161 (quoting Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310, 316 (1911)).]
See also Mistrick v. Division of Medical Assistance and Health Services, 154 N.J. 158, 165, 712 A.2d 188 (1998); Zirger v. General Accident Ins. Co., 144 N.J. 327, 330, 676 A.2d 1065 (1996); Division of Youth and Family Servs. v. J.B., 120 N.J. 112, 118-19, 576 A.2d 261 (1990). Thus, even if this case can be considered moot, we find a decision on the merits to be warranted.
Nor do we regard Ikerd to have waived her right to contest the sentence imposed when, faced with no viable alternative, she threw herself upon the mercy of the court. In such a circumstance, her equivocal acceptance of a pre-ordained result cannot be termed voluntary or knowing. State v. Scherzer, 301 N.J.Super. 363, *521 449, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997).

II.
We recognize that punishment, including the imposition of a term of incarceration in the custody of the Department of Corrections, can legally be imposed on a defendant as the result of an inexcusable failure to comply with a condition of probation. N.J.S.A. 2C:45-3a(4) and -3b. However, the February hearing in Ikerd's case clearly demonstrated that the extent of the punishment imposed upon Ikerd resulted solely from her status as a pregnant addict. It bore no relationship to the offense that she initially committed, was excessively punitive, and accomplished no legitimate penal aim. It thus violated New Jersey law, and likely violated Ikerd's constitutional rights.
We commence our analysis with a discussion of New Jersey sentencing law and the bedrock principle that sentences should be oriented toward the offense, not the offender. State v. Jabbour, 118 N.J. 1, 6, 570 A.2d 391 (1990); State v. Baylass, 114 N.J. 169, 175, 553 A.2d 326 (1989); State v. Roth, 95 N.J. 334, 355, 471 A.2d 370 (1984); State v. Hodge, 95 N.J. 369, 375, 471 A. 2d 389 (1984). Accordingly, when imposing a sentence on a VOP, the focus of the sentencing judge must be upon the underlying crime and the sentence appropriate to that crime when considered in conjunction with the aggravating factors found by the court at the time the initial sentence was imposed and any mitigating factors surviving the probationary violation.
Generally, aggravating factors concentrate on the circumstances surrounding the commission of the original offense and serve to distinguish that offense from other similar offenses. State v. Yarbough, 195 N.J.Super. 135, 143, 478 A.2d 432 (App.Div.1984), remanded, 100 N.J. 627, 498 A.2d 1239 (1985). Once the court decides to impose a custodial sentence [as the result of a VOP], it must again weigh the aggravating and mitigating factors to determine whether to impose the presumptive sentence or one that is more appropriate. The only aggravating factors the court may consider are those that existed at the time of the initial sentencing.
[Baylass, supra, 114 N.J. at 176, 553 A.2d 326.]
See also State v. Vasquez, 129 N.J. 189, 205-06, 609 A.2d 29 (1992); State v. Molina, 114 N.J. 181, 184-85, 553 A.2d 332 (1989).
The fact that there has been a violation of probation "means a failure of non-custodial rehabilitation. It does not necessarily suggest aggravating circumstances regarding the original offense mandating an enhanced punishment scheme." State v. Smith, 226 N.J.Super. 276, 280, 543 A.2d 1060 (App.Div.1988). See also State v. Wilson, 226 N.J.Super. 271, 276, 543 A.2d 1057 (App.Div.1988). Cf. also People v. Bedenkop, 252 Ill.App.3d 419, 192 Ill.Dec. 163, 625 N.E.2d 123 (1993) (reversing sentence on VOP premised on defendant's conduct in giving birth to an addicted baby while on probation and on the court's desire to insulate defendant from further opportunities for pregnancy). Initial consideration of a defendant's amenability to probation relates to the weighing of mitigating, not aggravating factors, which if found to have been present then but not after probation was violated, can be deleted from the calculus when imposing a sentence on the VOP. Baylass, supra, 114 N.J. at 177, 553 A.2d 326; Molina, supra, 114 N.J. at 185, 553 A.2d 332. See also State v. Robinson, 232 N.J.Super. 21, 27-28, 556 A.2d 342 (App. *522 Div.1989), certif. denied, 117 N.J. 654, 569 A.2d 1349 (1989).
In the present case, the VOP judge considered as an aggravating factor not only the need to deter, found initially, but also the previously uncited risk that Ikerd would commit another offense, N.J.S.A. 2C:44-1a(3), as well as Ikerd's "disinclination to cooperate with probation in any respect." The precedent that we have discussed demonstrates that neither of the latter two factors should have been considered.[3] The judge was likewise wrong in seeking to address Ikerd's addiction in the fashion that he did. "By emphasizing the potential rehabilitative effect of incarceration, the court departed from the Code's mandate to forego defendant's capacity for rehabilitation and to concentrate on fitting the penalty to the crime." Baylass, supra, 114 N.J. at 179, 553 A.2d 326 (citing State v. Hodge, 95 N.J. 369, 378-79, 471 A.2d 389 (1984)).
Further, we find no warrant in the Code of Criminal Justice or case law interpreting it for imposition by the judge of a period of parole ineligibility in connection with a VOP sentence of less than the presumptive term, as occurred in this case. See, State v. Ervin, 241 N.J.Super. 458, 473, 575 A.2d 491 (App.Div.1989), certif. denied, 121 N.J. 634, 583 A.2d 328 (1990). There is no logic in a determination that the crime, in context, justified only a reduced sentence, but nonetheless was of such magnitude that a period of parole ineligibility was required. See, e.g., Baylass, supra, 114 N.J. at 179, 553 A.2d 326; State v. Kruse, 105 N.J. 354, 361-62, 521 A.2d 836 (1987) (finding only limited circumstances in which a period of parole ineligibility can be imposed even on a presumptive sentence); Smith, supra, 226 N.J.Super. at 280-81, 543 A.2d 1060.
Finally, we are satisfied that the judge's reasons for sentencing Ikerd to prison had no relationship whatsoever to the Criminal Code, as is required. No where was there any real consideration given to the impact of the probation violation that was demonstrated and to which Ikerd admitted guilt (essentially, the use of drugs in 2001) on the "in out" decision that must precede any sentencing on a VOP. Baylass, supra, 114 N.J. at 175, 179, 553 A.2d 326; Molina, supra, 114 N.J. at 184, 553 A.2d 332. The transcript of the February hearing clearly discloses that the only reason that the judge sent Ikerd to prison was to protect the health of her fetus, a consideration wholly unrelated to Ikerd's underlying crime of welfare fraud. That the court was willing to reconsider its sentence if Ikerd's pregnancy terminated constitutes disturbing but compelling proof of this proposition. Ikerd was punished by being subjected to the extended prison term because she was pregnant and addicted, and for no other reason.
A sentencing judge's personal views as to the nature of appropriate protections in this circumstance cannot substitute for the Code's carefully delineated sentencing scheme in this regard. "Judges have no business imposing their views of `enlightened' sentencing on society." State v. Des Marets, 92 N.J. 62, 66, 455 A.2d 1074 (1983) (citing id. at 91, 455 A.2d 1074 (Handler, J. dissenting)).
The purpose of the criminal justice system is to determine whether a crime has been committed and, if so, to punish the guilty partiesnot to determine the most effective policy to combat a particular social ill.

*523 [Jean Reith Schroedel & Pamela Fiber, Punitive Versus Public Health Oriented Responses to Drug Use by Pregnant Women, 1 Yale J. Health Pol'y L. & Ethics 217 (2001).]
See also Barrie Becker & Peggy Hora, The Legal Community's Response to Drug Use During Pregnancy in the Criminal Sentencing and Dependency Contexts: A Survey of Judges, Prosecuting Attorneys, and Defense Attorneys in Ten California Counties, 2 S.Cal. Rev. L. & Women's Stud., 527, 531 (Spring 1993) ("Judges who take it upon themselves to solve problems of drug-exposed infants, however sympathetic their actions may be, are acting like legislators and are making medical decisions that they are usually ill-equipped to make.").
The conduct of the judge in this case usurped the powers of the legislature. It was contrary to statute. N.J.S.A. 2C:1-5a ("no conduct constitutes an offense unless the offense is defined by this code or another statute of this State."). It violated principles of the separation of powers. See State v. Stewart, 136 N.J. 174, 181, 642 A.2d 942 (1994); State v. Cannon, 128 N.J. 546, 563, 608 A.2d 341 (1992). It was thus improper.

III.
Our decision to vacate the sentence imposed in this matter finds ample support in state law, and thus we do not discuss at length the constitutional implications of the court's action. However, we recognize that the VOP judge's sentencing rationale touches upon, at least, intertwined principles underlying federal and state safeguards against cruel and unusual punishment (see, e.g., Robinson v. California, 370 U.S. 660, 666-67, 82 S.Ct. 1417, 1420-21, 8 L.Ed.2d 758, 762-63 (1962) (holding addiction constitutes a status, not a crime for which punishment can be meted out); State v. Hampton, 61 N.J. 250, 273-74, 294 A.2d 23 (1972) (defining cruel and unusual punishment)[4]; Des Marets, supra, 92 N.J. at 81-82, 455 A.2d 1074), protection of the right of privacy, including the right of procreation (see, e.g., Roe, supra, 410 U.S. at 152-53, 93 S.Ct. at 726-27, 35 L.Ed.2d at 176-77; Griswold v. Connecticut, 381 U.S. 479, 484-85, 85 S.Ct. 1678, 1681-82, 14 L.Ed.2d 510, 514-15 (1965); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); Right to Choose v. Byrne, 91 N.J. 287, 305-07, 450 A.2d 925 (1982)), and both due process and equal protection guarantees. See, e.g., Viereck v. United States, 318 U.S. 236, 241-42, 63 S.Ct. 561, 563-64, 87 L.Ed. 734, 738 (1943); Right to Choose, supra, 91 N.J. at 305-10, 450 A.2d 925. See gen., e.g., Dorothy E. Roberts, Punishing Drug Addicts Who Have Babies: Women of Color, Equality, and the Right of Privacy, 104 Harv. L.Rev. 1419 (May 1991); Barrie L. Becker, Order in the Court: Challenging Judges Who Incarcerate Pregnant, Substance-Dependent Defendants to Protect Fetal *524 Health, 19 Hastings Const. L.Q. 235 (Fall 1991).

IV.
In sum, we find no malevolence in the motives of the VOP judge in sentencing Ikerd to State prison. Nonetheless we find no legal support for what he did. Because the initially imposed period of probation was within those authorized for a third-degree crime, and the maximum period of that probation with appropriate credits has long expired, we reinstate the original probationary sentence and direct that no further proceedings are required.
NOTES
[1] This case was initially argued on the December 16, 2003 ESOA calendar, before Judges Stern and Payne. We invited letter briefs on the issues developed herein.
[2] At our request, the February transcript was reviewed for accuracy during the course of this appeal. Changes, including the substitution of "satisfied" for "received" and a change in the attribution of a comment, were made by the transcribing reporter and communicated to us and to the parties.
[3] Although not addressed by the VOP judge, Ikerd's drug use during pregnancy did not, at time of sentencing, by virtue of the pregnancy constitute a crime. Cf. In re K.H.O., 161 N.J. 337, 349, 736 A.2d 1246 (1999).
[4] Commentators have faulted protective incarceration of methadone-dependent pregnant women in facilities that lack methadone treatment because the deprivation of methadone causes severe physical consequences to the mother and almost inevitably leads to the death of the fetus, thereby constituting cruel punishment. See Stephen R. Kandall & Wendy Chavkin, Illicit Drugs in America: History, Impact on Women and Infants, and Treatment Strategies for Women, 43 Hastings L.J. 615, 629 n. 126 (1992). See also Peggy Hora & Barrie Becker, Judicial Considerations when Sentencing Pregnant Substance Abusers, 35, No.2 Judges' J. 3, 6 (Spring 1996). That concern, arising initially in this case as the result of the imprisonment of Ikerd in the Middlesex County Jail, was alleviated by her transfer to a hospital facility and her subsequent transfer to a prison where methadone was apparently available.