975 A.2d 466

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. MICHAEL P. HANNIGAN, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 12, 2008—Decided November 12, 2008—
Remanded February 11, 2009—Submitted May 5,
2009—Decided July 22, 2009.

Before Judges SKILLMAN, GRAVES and GRALL.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*Raquel Y. Bristol,* Assistant Deputy Public Defender, of counsel and on the brief).

*Anne Milgram,* Attorney General, attorney for respondent (*Teresa A. Blair,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

GRALL, J.A.D.

Pursuant to an agreement with the State resolving charges included in six indictments, defendant Michael P. Hannigan pled guilty to seven counts of third-degree burglary, *N.J.S.A.* 2C:18–2a, two of third-degree theft of a motor vehicle, *N.J.S.A.* 2C:20–3, and two of fourth-degree criminal mischief, *N.J.S.A.* 2C:17–3a(1), and imposition of sentence was suspended for two years. The crimes involved unauthorized entry of seven motor vehicles and were committed on January 19, 24 and 29, 2001 (Indictments 01–06–235, 01–06–236 and 01–06–237), May 18 and 22, 2001 (Indictments 01–07–275 and 01–07–276), and June 1 and 11, 2001 (Indictment 01–07–274).

Defendant did not successfully complete the suspension of imposition of sentence (hereinafter "suspension"). One of the conditions was to refrain from additional crimes or risk revocation and imposition of any sentence that might have been imposed originally, including consecutive sentences. *N.J.S.A.* 2C:43–2a; *N.J.S.A.* 2C:45–1a–b; *N.J.S.A.* 2C:45–3. Prior to expiration of the suspension in 2004, defendant was charged with and pled guilty to fourth-degree crimes, peering and attempted peering into the window of a dwelling, *N.J.S.A.* 2C:18–3c.

After defendant pled guilty to the new crimes, the judge revoked the suspension of sentencing on defendant's 2001 crimes and imposed sentences for the crimes committed in 2001 and 2004.[1]

Defendant was twenty-four years old at the time, and the judge sentenced him as a youthful offender pursuant to *N.J.S.A.* 2C:43–5 and *N.J.S.A.* 30:4–148. For the crimes committed in 2001, the judge imposed consecutive indeterminate sentences for two of defendant's third-degree burglary convictions, each with a maximum of five years by operation of law, *N.J.S.A.* 30:4–148 and *N.J.S.A.* 2C:43–6a. Each indeterminate sentence for the remaining convictions, including those for trespass in 2004, was imposed to run concurrently with one of the two consecutive indeterminate sentences for burglary.

After considering defendant's excess sentencing appeal in accordance with *Rule* 2:9–11, we affirmed the sentences. The Supreme

---

[1] Under the terms of the consent order, if defendant had not violated the conditions, he would have been sentenced to a term of probation upon successful completion of the suspension. Because that is not what occurred, defendant was not prejudiced. *R.* 2:10–2. Accordingly, it suffices to state the contemplated probationary sentence would have been illegal. Upon successful completion of a suspension, the sentence is deemed "satisfied." *N.J.S.A.* 2C:45–2c. A sentence may not be imposed unless the suspension is revoked. *N.J.S.A.* 2C:45–3b.

Defendant's objection to conditions imposed in connection with the suspension lacks merit. *See N.J.S.A.* 2C:43–2 and *N.J.S.A.* 2C:45–1; *State v. Malave*, 249 *N.J.Super.* 559, 563–64, 592 A.2d 1231 (App.Div.1991), *certif. denied*, 127 *N.J.* 559, 606 A.2d 370 (1992).

Court granted defendant's petition for certification and summarily remanded for reconsideration in light of *State v. Baylass,* 114 *N.J.* 169, 553 *A.*2d 326 (1989). *State v. Hannigan,* 198 *N.J.* 309, 966 *A.*2d 1076 (2008). The remand permits us to address objections defendant did not raise.

I

*Baylass* provides guidelines for addressing a violation of a condition of probation. 114 *N.J.* at 170, 553 *A.*2d 326. And, this court has held that those guidelines also apply when violation of a condition of a suspension is at issue. *State v. Cullen,* 351 *N.J.Super.* 505, 511, 799 *A.*2d 23 (App.Div.2002).[2]

The judge must first determine whether the violation warrants modification of the conditions or justifies revocation and sentencing to a term of incarceration that could have been given initially. *See N.J.S.A.* 2C:45-2b; *N.J.S.A.* 2C:45-3a(4), b. In making that "in-out determination," the judge may consider the violation as favoring incarceration only in so far as the conduct constituting the violation is in "conflict with a defendant's probationary status" or diminishes the weight of the mitigating factors that favored the disposition in the first instance. *Baylass, supra,* 114 *N.J.* at 174–77, 553 *A.*2d 326; *State v. Molina,* 114 *N.J.* 181, 182–83, 553 *A.*2d 332 (1989); *see State v. Smith,* 226 *N.J.Super.* 276, 280, 543 *A.*2d 1060 (App.Div.1988) (quoted with approval in *Baylass, supra,* 114 *N.J.* at 176, 553 *A.*2d 326), *certif. denied,* 114 *N.J.* 500, 555 *A.*2d 619 (1989). The violation does not eliminate a presumption of non-incarceration applicable to the original crimes or add weight to the aggravating factors that can overcome it. *State v. Zeliff,* 236 *N.J.Super.* 166, 172, 564 *A.*2d 1213 (App.Div.1989).

---

[2] Neither party urges us to deviate from *Cullen. See generally* II Final Report of the New Jersey Criminal Law Revision Commission, *The New Jersey Penal Code: Commentary* § 2C:43-2 at 313 (1971) (suggesting a different approach following revocation of suspension of imposition of sentence).

Beyond the initial decision to revoke and incarcerate, the violation has limited relevance. When there is discretion to select a sentence within the permissible range, the violation may be considered as it "relates to mitigating, not aggravating, factors" found at the time of the initial hearing. *Baylass, supra,* 114 *N.J.* at 170, 553 *A.*2d 326. And, the violation may not "be used to justify the imposition of consecutive sentences" for the initial crimes. *Id.* at 171, 553 *A.*2d 326. Instead, consecutive ordinary sentences must be justified under the offense-based criteria of *State v. Yarbough,* 100 *N.J.* 627, 643–44, 498 *A.*2d 1239 (1985). *Baylass, supra,* 114 *N.J.* at 180–81, 553 *A.*2d 326.

In reviewing this youthful offender's consecutive indeterminate sentences for compliance with *Baylass,* we recognize that those guidelines, developed in a case involving ordinary sentences, are not wholly applicable to indeterminate sentences which serve a purpose different than ordinary sentences. *See, e.g., State v. Berger,* 258 *N.J.Super.* 553, 561–62, 610 *A.*2d 892 (App.Div.1992) (concluding that *Baylass* guidelines relevant to duration of ordinary sentences do not apply to indeterminate sentences with maximum terms fixed by statute); *see also State v. Styker,* 262 *N.J.Super.* 7, 11–21, 619 *A.*2d 1016 (App.Div.) (considering the differences between indeterminate sentences and ordinary sentences otherwise authorized by the Code and concluding that the presumption in favor of youthful offender sentencing applicable under prior law did not survive enactment of the Code), *aff'd o.b.,* 134 *N.J.* 254, 633 *A.*2d 521 (1993); *see also State v. Styker,* 134 *N.J.* 254, 255–63, 633 *A.*2d 521 (1993) (Wilentz, C.J., concurring) (discussing the conflicting purposes of ordinary and indeterminate sentences and the resulting disparity in sentences).

## II

Defendant was twenty-one at the time of the hearing that resulted in the initial suspension subject to conditions. He had no prior convictions but six juvenile adjudications. He had been abused as a child, placed in juvenile facilities, engaged in behavior

indicative of disturbance and been diagnosed with "multiple psychiatric [and mental] disorders, including mild mental retardation, learning disabilities [and] selective mutism."

Consistent with *Baylass,* at the time of the initial proceeding the judge identified the aggravating and mitigating factors and stated reasons for suspending imposition of sentence. He found that defendant's history and condition gave cause for "concern" about "risk" of recidivism but also tended to mitigate "his culpability." Because rehabilitative services were available in the community and defendant was living in a "structured setting" with a person "able to provide him with the necessities," the judge found "a degree of hope for" defendant's rehabilitation.

The judge identified two aggravating factors—a risk of reoffense and a need for specific deterrence, *N.J.S.A.* 2C:44–1a(3), (9), and three mitigating factors—grounds tending to excuse defendant's conduct, his potential for favorable response to treatment in the community and his willingness to make restitution, *N.J.S.A.* 2C:44–1b(4), (6), (10). The mitigation based on restitution was expressly stated; the others are inferable from the judge's explanation for the suspension. Because defendant's convictions included theft of a motor vehicle, the presumption of non-incarceration generally applicable to a crime of the third degree did not apply. *N.J.S.A.* 2C:44–1e.

The judge also complied with *Baylass* after defendant pled guilty to new crimes in violation of the conditions of his suspension. In considering whether to revoke the suspension and incarcerate, the judge identified the same aggravating factors he had at the time of the initial hearing—the risk of re-offense and the need for specific deterrence. With regard to the significance of defendant's new convictions, the judge found:

> [D]efendant was given the opportunity to affirmatively address the severe limitations that have compounded his life up to this point in time. And, unfortunately, that did not occur because of his failure to comply with the terms of the September 5th court proceeding and becoming the subject of new criminal charges, for which the Court has the obligation to impose sentence today.

> The psychosexual assessment of the Defendant, according to Dr. Shea, indicates he is cognitively limited, immature, he demonstrates a disregard for the rights of others, his personality functioning can be characterized as dependent, impulsive and hedonistic and he has difficulty understanding others' rights. His own development has been skewered by his own sexual victimization and his preoccupation with pornography does suggest compulsive behavior and a well developed fantasy life.
>
> He is [in] need of ongoing supervision and involvement with mental health services. And in that regard we have Dr. Cimering's report noting the Defendant's suffering from a pervasive developmental disorder, severe mutism, major depressive disorder with psychotic features, highly substance dependence and oppositional defiant disorder with borderline intellectual functioning. So it is obviously a bleak picture that has been portrayed in these assessments. And they are before the Court for determination as to what is the appropriate sentence.
>
> He presents a risk and there is a need for specific deterrence. It is difficult to discern too many mitigating factors that the Court can point to other than his youth. He's now [twenty-four] years of age, but beyond that there isn't too much that the Court can look to.

This explanation demonstrates compliance with *Baylass*. The judge did not treat defendant's violation as a new aggravating factor warranting incarceration. Rather, the judge viewed his new convictions as diminishing the weight of two of the mitigating factors he previously found—defendant's potential to address his severe needs while living in a supportive home and the mental conditions that tended to excuse the burglaries and related crimes. As authorized by *Baylass*, the judge also deemed defendant's criminal conduct to be inconsistent with his ability to lead a law-abiding life, as required by the conditions of his suspension. *N.J.S.A.* 2C:45–1a. Moreover, the judge could not rely on the presumption of non-incarceration to justify a non-custodial sentence for either the original or subsequent convictions. *N.J.S.A.* 2C:44–1e.

Defendant argues that during the course of his suspension, the evaluations contemplated by the conditions of suspension were not completed. But the judge's decision is adequately supported by the significance of defendant's new convictions and is not dependent upon inexcusable failure to comply "with a substantial condition." *N.J.S.A.* 2C:45–3a(4); *see Baylass, supra,* 114 *N.J.* at 174–77, 553 *A.*2d 326. Accordingly, there is no adequate ground for this court to disturb the judge's "in-out decision" on the original

crimes. *See State v. Cassady,* 198 *N.J.* 165, 179–84, 966 *A.*2d 473 (2009).

Having resolved the "in-out decision" in favor of incarceration for the original and new convictions, the judge concluded that indeterminate sentences were appropriate for this then twenty-four-year-old defendant. *N.J.S.A.* 2C:43–5 (eligibility ends at age twenty-six). In selecting indeterminate sentences, as opposed to sentences "otherwise authorized by the Code," *N.J.S.A.* 2C:43–5, the judge took account of defendant's youth and his "severe needs."

Because defendant's convictions were all for crimes of the third or fourth degree, the judge had no discretion to set the terms. *N.J.S.A.* 30:4–148 provides:

> The courts in sentencing pursuant to *N.J.S.A.* 2C:43–5 *shall not fix or limit the duration of sentence, but the time which any person shall serve in confinement or on parole shall not in any case exceed 5 years or the maximum term provided by law for the crime* for which the prisoner was convicted and sentenced, *if such maximum be less than 5 years;* provided, however, that the court, in its discretion, for good cause shown, may impose a sentence greater than 5 years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed.

The maximum terms in this case are five years for the third-degree crimes and eighteen months for the fourth-degree crimes. *N.J.S.A.* 2C:43–6a(3)–(4). Thus, the terms were fixed by law, and, for that reason, the *Baylass* guidelines on duration of a sentence had no relevance. *Berger, supra,* 258 *N.J.Super.* at 561–62, 610 *A.*2d 892; *cf. State v. Jarbath,* 114 *N.J.* 394, 402–03, 555 *A.*2d 559 (1989) (directing use of aggravating and mitigating factors in considering good cause for an indeterminate sentence in excess of five years for crimes of the first or second degree, *N.J.S.A.* 30:4–148).

■ A judge has discretion to impose concurrent or consecutive indeterminate sentences. *State v. Carroll,* 66 *N.J.* 558, 561–62, 334 *A.*2d 17 (1975). For the crimes of the third degree committed in 2001, the judge imposed two consecutive indeterminate sentences. Consistent with *Baylass,* the judge did not rely on defendant's violation of a condition of his suspension in deciding on

consecutive sentences for defendant's original crimes. Instead, as suggested by *Baylass*, the judge applied the *Yarbough* criteria and focused on the multiple crimes and victims and the guiding principle that there should be no free crimes. *Baylass, supra,* 114 *N.J.* at 180, 553 *A.*2d 326; *Yarbough, supra,* 100 *N.J.* at 643–44, 498 *A.*2d 1239.[3] Assuming the *Yarbough* criteria apply to indeterminate sentences, consecutive sentences were appropriate, if not mandated, under those criteria.

### III

The question remaining is whether the *Yarbough* criteria govern consecutive indeterminate terms, which are provided by the Legislature as an alternative to the ordinary "sentences otherwise authorized by the [C]ode." *N.J.S.A.* 2C:45–3. The distinction suggests different criteria for consecutive sentencing. *See Styker, supra,* 134 *N.J.* at 255–64, 633 *A.*2d 521 (Wilentz, C.J., concurring) (discussing differences). While the Code's scheme for ordinary sentences is "based on notions of proportionality and desert," *Yarbough, supra,* 100 *N.J.* at 635, 498 *A.*2d 1239, "laws concerning youthful offenders reflect the long-standing philosophy that 'correction and rehabilitation, rather than retribution,' are the preferred approaches," *State v. Des Marets,* 92 *N.J.* 62, 70, 455 *A.*2d 1074 (1983) (quoting *State v. Horton,* 45 *N.J.Super.* 44, 46, 131 *A.*2d 425 (App.Div.1957)).

The Court developed the *Yarbough* criteria because the Legislature has not provided guidance for the exercise of judicial discretion involved in selecting consecutive or concurrent sentences. 100 *N.J.* at 636–37; *see N.J.S.A.* 2C:44–5. In filling the void, the Court fashioned criteria that would "best further the purposes" of ordinary sentences—"principles of deserved punishment in proportion to the offense and not [the] rehabilitative potential," of the

---

[3] As noted above, the judge imposed concurrent sentences for the new convictions and those sentences also run concurrently with the second indeterminate term for burglary. *See State v. Sutton,* 132 *N.J.* 471, 484, 625 *A.*2d 1132 (1993) (noting the presumption in favor of consecutive sentences for a crime committed on probation).

offender. *Ibid.* The Court's subsequent decisions make it clear that the *Yarbough* criteria preclude consideration of facts relevant to rehabilitation, *Baylass, supra,* 114 *N.J.* at 180–81, 553 *A.*2d 326 (disapproving the judge's reliance on characteristics of the offender relevant to rehabilitation), and stress that the propriety of consecutive sentences depends upon the Legislature's purpose in making the sentences at issue available, *State in re J.L.A.,* 136 *N.J.* 370, 376–77, 643 *A.*2d 538 (1994) (discussing consecutive juvenile commitments in light of the purposes of the juvenile code).

When *Yarbough's* rationale is considered, its offense-based criteria cannot be understood as controlling indeterminate sentences made available by the Legislature in the interest of rehabilitating eligible youthful offenders which is an offender-based decision and goal. Permissible justifications for consecutive indeterminate sentences were set forth in *Carroll,* prior to the enactment of the Code. 66 *N.J.* at 561–62, 334 *A.*2d 17. In *J.L.A.,* a case decided after *Yarbough, Des Marets* and *Styker,* the Court relied on *Carroll* in addressing consecutive sentences for juveniles without questioning *Carroll's* continuing relevance to indeterminate sentences. 136 *N.J.* at 374–83, 643 *A.*2d 538. Under *Carroll,* "routine use" of consecutive indeterminate terms "is undesirable and should be avoided." *Carroll, supra,* 66 *N.J.* at 561, 334 *A.*2d 17; *see J.L.A., supra,* 136 *N.J.* at 376, 381, 643 *A.*2d 538 (following *Carroll* and concluding that "consecutive sentences for juvenile offenders should be the exception and not the rule"). They may be used to highlight "special circumstances" pertinent to the particular defendant's release or to address that offender's potential for need of a longer period of rehabilitation. *Carroll, supra,* 66 *N.J.* at 562, 334 *A.*2d 17. Multiplicity of crimes, criminal episodes and victims are irrelevant except as probative of the offender's rehabilitative needs. *See J.L.A., supra,* 136 *N.J.* at 382, 643 *A.*2d 538 (observing that consecutive sentences in some cases may serve "rehabilitation by demonstrating that those who commit crimes can be punished separately for each instance of misconduct").

The theory behind indeterminate sentencing is to allow the custodial authority discretion to release on rehabilitation and give the offender incentive to take advantage of the rehabilitation offered. *Des Marets, supra,* 92 *N.J.* at 71, 455 A.2d 1074. Consecutive indeterminate sentences, when fixed without reference to the offender's rehabilitative needs, have the capacity to limit the releasing authority's discretion and the offender's incentive.

The parole laws do not suggest an intention on the part of the Legislature to significantly limit the Parole Board's discretion to release youthful offenders upon rehabilitation. The standards for release of all adult inmates—whether sentenced to ordinary specific or indeterminate youthful offender sentences—are the same. *N.J.S.A.* 30:4–123.53. But the standards for selection of a primary parole eligibility date are different, except in cases involving medical parole. *N.J.S.A.* 30:4–123.51(a), (d), (*l*). For ordinary sentences, eligibility requires service of a fixed percentage of the term minus statutory credits for good behavior and institutional assignments. *N.J.S.A.* 30:4–123.51(a). In contrast, the schedule for primary parole eligibility of adult inmates sentenced as youthful offenders is left to the Board, restrained only by limitation on the latest date and an obligation to make adjustments based on "program participation." *N.J.S.A.* 30:4–123.51(d). While the Legislature has not declared these adult inmates immediately eligible for parole, as it has with juveniles, *N.J.S.A.* 30:4–123.51(f), the discretion to fix appropriate schedules is given to the Board, not the courts. Nonetheless, because primary parole eligibility terms are aggregated, *N.J.S.A.* 30:4–123.51(h), a court's decision to impose consecutive indeterminate sentences has an impact on primary parole eligibility.[4] Courts must consider that impact when imposing consecutive sentences. *N.J.S.A.* 2C:43–2e.

---

[4] The Board's schedule is not at issue on this appeal. *See Berger, supra,* 258 *N.J.Super.* at 562 n. 7, 610 A.2d 892 (noting concerns about regulations and their use).

The foregoing considerations lead us to hold that consecutive indeterminate sentences for youthful offenders must be justified with reference to offender-based criteria centered on rehabilitation, and subject to *Carroll's* direction to avoid routine use of consecutive terms for youthful offenders. 66 *N.J.* at 561, 334 *A.*2d 17. *Baylass's* reference to *Yarbough,* appearing in a decision involving ordinary sentences, cannot be understood to require or permit imposition of consecutive indeterminate sentences based on principles of deserved punishment. The Legislature elected to retain indeterminate sentences for youthful offenders to allow an opportunity for rehabilitation in a proper case, and it is more likely that the Legislature would intend that judges impose consecutive indeterminate sentences, as they had prior to enactment of the Code, in accordance with the criteria enunciated in *Carroll.*

Because defendant's consecutive indeterminate sentences were justified with reference to the *Yarbough* criteria, we remand so that the trial judge can consider whether consecutive indeterminate sentences are warranted based on criteria relevant to defendant's rehabilitation. One relevant factor is defendant's potential to benefit from rehabilitation during a term of incarceration. When these sentences were imposed, the judge mentioned defendant's mental conditions and his need for supervision. On remand, the judge should consider whether defendant has the capacity to benefit from the rehabilitative programs available. If defendant does not have that potential, consecutive indeterminate sentences should not be utilized to permit his confinement and supervision for a term longer than one he would have received if given ordinary sentences otherwise authorized by the Code and its standards for deserved punishment. *N.J.S.A.* 2C:43–5.

Remanded for reconsideration of the sentences.