1 A.3d 607

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
RICHARD CLARKE, DEFENDANT–RESPONDENT.

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. WILLIAM
T. DOLAN, DEFENDANT–RESPONDENT.

Argued February 23, 2010—Decided July 21, 2010.

*Jamin Cooper,* Assistant Prosecutor, argued the cause for appellant (*Wayne J. Forrest,* Somerset County Prosecutor, attorney; *Eric M. Mark,* Assistant Prosecutor, on the brief).

*Stephen P. Hunter,* Assistant Deputy Public Defender, argued the cause for respondents (*Yvonne Smith Segars,* Public Defender, attorney; *Mr. Hunter* and *Randall W. Westreich,* Assistant Deputy Public Defender, on the briefs).

*Ronald Susswein,* Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Paula T. Dow,* Attorney General, attorney).

Justice WALLACE, JR., delivered the opinion of the Court.

We consolidate these companion Drug Court appeals for the purpose of this opinion and address whether it was error for the Appellate Division to remand in both cases to conduct "plenary" hearings. In each case, the prosecutor objected to the admission of the defendant into Drug Court, and each appealed. The Drug Court judge relied on several reasons to deny relief in separate written opinions. Following their respective motions for leave to appeal, the Appellate Division temporarily remanded for the Drug Court to conduct plenary hearings and to evaluate the credibility of the witnesses before deciding the issue of admission into the Drug Court program. We granted leave to appeal.

We hold that a plenary hearing is not necessary, but that, similar to our Pretrial Intervention protocol and our sentencing procedures, an informal hearing is sufficient for the Drug Court to give full and fair consideration to a defendant's application to the Drug Court program. However, because we cannot fully determine whether the trial court applied the correct legal standard for admission to the Drug Court under the so-called "second track" of the requirements, we remand in each case for further proceedings.

I.

A.

*State v. Clarke*

In September 2008, a Somerset County grand jury indicted defendant Richard Clarke for third-degree theft by deception,

*N.J.S.A.* 2C:20–4(a). Clarke admitted that from January 2008 to June 2008, while employed by Staples, Inc., he entered fraudulent returns of merchandise and removed money from the store's safe. The amount of the fraudulent returns ranged from fifteen to several hundred dollars. Clarke claimed he did this as often as six times per week.

On October 24, 2008, Clarke applied for admission into the Somerset County Drug Court program. He was interviewed by the substance abuse evaluator for the Drug Court. Clarke revealed that he smoked $200 worth of crack cocaine daily for a year-and-a-half period, but ended his drug abuse without the assistance of any treatment in July 2008. He said that although he had been married for six months, his wife knew nothing of his addiction.

The evaluator noted that "[t]here is a high likelihood that Mr. Clarke will relapse to [the] use of drugs without close outpatient monitoring and structured therapeutic services[.]" She recommended that Clarke "complete a Level II.5—Partial hospitalization treatment program to continue abstinence and begin a program of recovery. In a Level II.5 program, Mr. Clarke should be able to obtain access to physicians that may be able to help stabilize his medical conditions." Additionally, following a meeting with Clarke's wife, the evaluator made a progress note, outlining the wife's comments that she was unaware of her husband's drug usage.

On January 15, 2009, the prosecutor submitted a written objection to Clarke's admission into Drug Court, noting that Clarke's prior convictions for second-degree theft in 1999 and 2003, and his federal conviction for wire fraud in 1999, rendered him ineligible for the Drug Court program. The prosecutor asserted that defendant's claimed drug history did not match the facts of his life and he seriously questioned the veracity of Clarke's alleged drug use.

On February 1, 2009, Clarke responded to the prosecutor's objection letter, contesting each one of the claims. Clarke next

filed an appeal to the prosecutor's rejection of his Drug Court application. A hearing before the Drug Court was held on April 6, 2009. In a written decision, the Drug Court judge began his analysis by setting forth the criteria for admission to the Drug Court program. The judge noted that defendant's multiple prior convictions for second-degree offenses required the prosecutor's approval for admission under the first track. Further, the judge explained that

> Drug Court is reserved for those defendants who are drug dependent at the time of sentencing and if Defendant is no longer drug dependent, a probationary sentence is not appropriate for him. Thus, this Court finds that the prosecutor's decision to object to Defendant's application for Drug Court was not a patent and gross abuse of discretion. Further, Defendant is also ineligible for Drug Court under the second track which also requires substance abuse as a prerequisite for admission.

Additionally, the Drug Court judge weighed the aggravating and mitigating factors, finding three applicable aggravating factors and no mitigating factors. As a result, the judge concluded that a probationary sentence would not be appropriate for defendant. The judge specifically noted that "these issues were addressed in the Drug Court Team Conference where the participants voiced their support of the Prosecutor's decision concerning the applicant."

Clarke filed a motion for leave to appeal. The Appellate Division temporarily remanded for the Drug Court judge to hold "a plenary hearing as to whether ... Clarke, is in need of drug treatment and whether he otherwise meets the criteria of the second track[.]" The remand order also instructed the Drug Court judge to make findings of fact and evaluate the credibility of the witnesses. We granted the State's motion for leave to appeal. 200 *N.J.* 204, 976 *A.*2d 381 (2009).

## B.

### State v. Dolan

A grand jury indicted defendant William T. Dolan on October 29, 2008, with two counts of third-degree burglary, *N.J.S.A.* 2C:18–2, eight counts of third-degree attempted burglary, *N.J.S.A.*

2C:5–1 and *N.J.S.A.* 2C:18–2, three counts of third-degree theft by unlawful taking or disposition, *N.J.S.A.* 2C:20–3, and one count of fourth-degree resisting arrest, *N.J.S.A.* 2C:29–2(a).

The evidence revealed that on October 14, 2008, the Watchung Police Department responded to the area of Hillcrest Road for a report of a suspicious male with a backpack asking for directions. When the police approached the man, later identified as Dolan, he fled. A short while later, Dolan was observed entering a car. When the owner of the car confronted him, Dolan fled on foot. The police ultimately apprehended Dolan. At the police station, Dolan waived his *Miranda* [1] rights and admitted his involvement in multiple burglaries throughout the past year.

On November 24, 2008, Dolan applied for admission into the Somerset County Drug Court. Prior to the completion of a substance abuse evaluation, the prosecutor wrote to the Drug Court judge objecting to defendant's admission into the Drug Court program because he was "a threat to the community." The prosecutor listed Dolan's criminal history, which consisted of three convictions for burglary and other crimes in 1993, convictions for burglary in 1995, 1999, and 2007, and a conviction for credit card fraud in 2008. The prosecutor noted that an evaluation of the aggravating and mitigating factors demonstrated that Dolan was not eligible for a probationary sentence, and that instead he was eligible for an extended term sentence.

On January 8, 2009, Dolan filed an appeal in response to the prosecutor's rejection letter. He argued that his burglary charges were typical convictions for drug addicted people and did not support a finding that he was a danger to the community under the second track for entry into Drug Court. Dolan argued that a prior Monmouth County drug evaluation had recommended that he undergo in-patient drug treatment and that a current Somerset County substance abuse evaluation should be conducted.

---

[1] *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

Meanwhile, the substance abuse evaluator interviewed Dolan on February 4, 2009. In her report rendered on March 3, 2009, the evaluator noted that Dolan revealed that he had used cocaine and heroin every day during the thirty days preceding his incarceration and that his previous efforts to overcome his addiction failed. The evaluator recommended a "Level III.5—Clinically Managed High–Intensity Residential Treatment (long-term) program" for Dolan.

A hearing on Dolan's appeal was held on April 6, 2009. The next day the Drug Court judge rendered his written decision denying relief. Although the judge mentioned Dolan's previous Monmouth County drug evaluation, he made no reference to the Somerset County substance abuse evaluation that was completed on March 3, 2009. After reviewing the criteria for admission into the Drug Court program, the judge found that the prosecutor's objection based on Dolan's perceived threat to the community was not a gross and patent abuse of discretion. Further, the judge found that Dolan was ineligible under the second track because a danger to the community would result if he were placed on probation. The judge weighed the relevant aggravating and mitigating factors to conclude that a probationary sentence would not be appropriate for Dolan.

Dolan sought leave to appeal. The Appellate Division entered a temporary remand order similar to the one issued in Clark's case. Additionally, the panel directed the Drug Court judge to consider whether Dolan's history of residential and car burglaries disqualified him under principles applicable to the second track. We granted the State's motion for leave to appeal. 200 *N.J.* 204, 976 *A.*2d 382 (2009). We also granted the Attorney General's motion to appear as amicus curiae.

II.

In each case, the State argues that the plenary hearing ordered by the Appellate Division would undermine the Drug Court and cripple the criminal court calendar. The State contends that there

is no basis in law for plenary hearings, and that in each case the prosecutor exercised appropriate discretion in denying admission into the Drug Court program.

In contrast, both Clarke and Dolan urge that we affirm the Appellate Division's orders for a plenary hearing because the Drug Court judge erroneously analyzed each case under the criteria for admission into the second track and accorded inappropriate deference to the prosecutor's objection. They contend that plenary hearings are required because the specific facts relied on by the prosecutor in rejecting each application are contested and such hearings are consistent with the Drug Court Manual.[2]

Clarke adds that the Drug Court erred in applying *State v. Soricelli*, 156 *N.J.* 525, 722 *A.*2d 95 (1999), to his situation, and that contrary to the Drug Court Manual and due process of law, he was not given notice and an opportunity to challenge the findings of the aggravating and mitigating factors that the judge employed as separate grounds for rejection.

Dolan adds that the Drug Court judge failed to apply the correct standards under the second track because the judge focused solely on his crimes and failed to consider whether he would be a threat to the community if he were granted an opportunity to rehabilitate in the Drug Court program. He asserts that the Drug Court judge erred by rejecting his application without reviewing the substance abuse evaluator's report, which is a critical evidentiary factor needed to determine whether an applicant would pose a danger to the community if placed on probation. Dolan also argues that the judge should have found mitigating factors because the Drug Court program generally reduces recidivism.

The Attorney General, as amicus, takes no position concerning whether Clarke and Dolan should have been admitted into the

---

[2] Administrative Office of the Courts, *Manual for Operation of Adult Drug Courts in New Jersey* (July 2002), *available at* http://www.judiciary.state.nj.us/directive/dctman.pdf. (Drug Court Manual or Manual).

Drug Court program. Instead, the Attorney General argues against the Appellate Division's instruction for the Drug Court to hold a plenary hearing and the requirement in the remand order that the judge receive testimony and make credibility findings. Particularly, the Attorney General argues that the practices and procedures set forth in the Drug Court Manual provide due process to defendants and a requirement that a Drug Court judge make findings of whether the substance abuse evaluator was a credible witness would undermine the informal teamwork approach of the Drug Court. Further, the Attorney General notes that even if a remand were appropriate for the limited purpose of ensuring the application of the correct legal standard for admission under the second track of the Drug Court program, there is no need to enlarge the factual record. Lastly, the Attorney General urges that if this Court deems it necessary to modify the Drug Court's current procedures, the Court should establish a task force or committee to make any recommended changes.

III.

A.

We recently lauded the success that our Drug Courts have achieved. *State v. Meyer*, 192 *N.J.* 421, 429, 930 *A.2d* 428 (2007). We emphasized that the team approach in the Drug Court features the judge interacting with "court staff, probation officers, treatment counselors, substance abuse evaluators, and the prosecutor and defense attorney to monitor a participant's recovery." *Id.* at 429, 930 *A.2d* 428 (citation omitted).

"Drug Courts are a creature of the judiciary[,]" *id.* at 430, 930 *A.2d* 428, and the practices and procedures of that court are set forth in the Drug Court Manual. *Id.* at 431, 930 *A.2d* 428. The Drug Court Manual outlines two separate tracks for admission into Drug Court. *Drug Court Manual, supra,* at 10. The applicant must either meet the requirements for "special probation" pursuant to *N.J.S.A.* 2C:35–14, track one, or "otherwise be eligible

under other sections of the Code of Criminal Justice[,]" track two. *Ibid.*

Under the first track, to meet the requirements for "special probation," the applicant must have committed a crime that is subject to a presumption of incarceration or a mandatory prison term, and the judge must find that the applicant satisfies nine separate factors. *N.J.S.A.* 2C:35–14(a)(1)–(9). A presumption of imprisonment applies to an applicant who is charged with a first or second-degree offense.[3] *N.J.S.A.* 2C:44–1(d). If the applicant is successful in meeting the requirements for admission under track one, the judge will then impose a five-year period of "special probation." *N.J.S.A.* 2C:35–14; *see also Manual, supra,* at 14. Admission under this track is generally obtained with the prosecutor's consent. *N.J.S.A.* 2C:35–14(c); *Manual, supra,* at 13. If the prosecutor does not consent, the trial judge may only admit the applicant under track one "if the judge finds a 'gross and patent abuse of prosecutorial discretion.' " *Meyer, supra,* 192 *N.J.* at 432, 930 *A.*2d 428 (citing *Manual, supra,* at 13); *N.J.S.A.* 2C:35–14(c).

The second track permits applicants to be admitted into Drug Court "under the general sentencing provisions of the Code of Criminal Justice." *Meyer, supra,* 192 *N.J.* at 432, 930 *A.*2d 428 (citing *Manual, supra,* at 16). An applicant is eligible for Drug Court sentencing under this track if:

a. the person has a drug or alcohol dependence, as determined by a diagnostic assessment and substance abuse treatment and monitoring is likely to benefit the person; and

b. the person has not been previously convicted or adjudicated delinquent for, and does not have a pending charge of murder, aggravated manslaughter, manslaughter, robbery, kidnapping, aggravated assault, aggravated sexual assault or sexual assault, or a similar crime under the laws of any other state or the United States; and

c. the person did not possess a firearm at the time of the present offense and has no history of possession of a firearm during an offense; and

---

[3] However, a person convicted of a first-degree crime or, a second-degree crime enumerated in *N.J.S.A.* 2C:43–7.2(d), is not eligible for special probation. *N.J.S.A.* 2C:35–14(b)(1)–(2).

d. no danger to the community is likely to result from the person being placed on probation.

[*Ibid.* (citing and quoting *Manual, supra,* at 16).]

Both first-degree and second-degree offenders are disqualified from admission into Drug Court under track two. *Ibid.* (citing *Manual, supra,* at 12, 17).

Under the second track, the applicant must convince the judge that a probationary sentence under the general sentencing provisions of the Code of Criminal Justice is appropriate. *Id.* at 433, 930 *A.*2d 428. The judge should weigh the aggravating and mitigating factors enumerated in *N.J.S.A.* 2C:44–1(a) and (b) and "determine whether a probationary or custodial sentence is appropriate." *State v. Baylass,* 114 *N.J.* 169, 173, 553 *A.*2d 326 (1989) (citation omitted). If the judge concludes that a probationary sentence is appropriate, a probationary term not to exceed five years in accordance with *N.J.S.A.* 2C:45–2 may be imposed and, "unlike cases sentenced under [the first track,] early termination of probation supervision is an option that the [D]rug [C]ourt team may consider." *Meyer, supra,* 192 *N.J.* at 433, 930 *A.*2d 428 (citation omitted).

Prior to the Drug Court's determination of defendant's application for admission to the Drug Court program, the assistant prosecutor or the substance abuse evaluator may oppose the application for either legal or clinical reasons. *Manual, supra,* at 26. In that event, the prosecutor or the evaluator must set forth in writing his or her findings and reasons for rejecting the application. *Ibid.* Thereafter, the applicant has fourteen days to file a motion with the Criminal Division Manager's Office, seeking a review of that rejection after which a hearing date will be set. *Id.* at 26–27.

Under the second track, the prosecutor's view, similar to every other team member's view, should be considered. However, the prosecutor's position under the second track's analysis is not given the special deference afforded in the first track. *Id.* at 18. As noted above, under the first track, the judge may only admit an

offender into Drug Court over the prosecutor's objection if the judge finds a gross and patent abuse of prosecutorial discretion. *Ibid.*

Following the hearing on the motion, the trial court shall make findings of fact and conclusions of law and state the reasons for granting or denying the motion. *R.* 1:7–4(a). Because the decision whether to admit the applicant into Drug Court is essentially a sentencing one, the "trial judge is required to consider all of the aggravating and mitigating factors and to find those supported by the evidence." *State v. Dalziel,* 182 *N.J.* 494, 505, 867 *A.*2d 1167 (2005). Indeed, as long as the sentence is within the statutory framework, we afford wide discretion to the judge's decision. *Id.* at 500, 867 *A.*2d 1167. Moreover, because the trial judge's disposition is interlocutory, it is appealable by leave of court. *R.* 2:2–3(b).

### B.

As our Drug Courts are a relatively recent innovation, we have not previously addressed the type of hearing that is required when there is an objection to an applicant's admission into Drug Court. The Appellate Division concluded that a plenary hearing is required and that such a hearing should include witnesses and credibility assessments. We reach a different conclusion.

Our basic disagreement with the need for a plenary hearing is the recognition that to determine whether to approve an application for admission to the Drug Court program is essentially a sentencing decision. Under each track, the judge determines whether a probationary sentence is appropriate. For the first track, *N.J.S.A.* 2C:35–14(a) expressly provides that

> [i]n determining whether to sentence the person pursuant to this section, the court shall consider all relevant circumstances, and shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing or other court proceedings, and shall also consider the presentence report and the results of the professional diagnostic assessment to determine whether and to what extent the person is drug or alcohol dependent and would benefit from treatment.

Those same considerations and sentencing guidelines also apply to the analysis of the second track. *Manual, supra,* at 16.

Nevertheless, defendants point to the language in the Drug Court Manual that requires that each application receive "full and fair consideration[,]" *id.* at 26, to argue that a plenary hearing is required. We are not persuaded by that argument.

The Legislature provided similar language in the related area of the Pretrial Intervention program (PTI), which provides that "[e]ach applicant for supervisory treatment shall be entitled to full and fair consideration of his application." *N.J.S.A.* 2C:43–12(f). In establishing uniform procedures for an applicant to challenge a prosecutor's rejection for admission into the PTI program, we declared that a "trial-type proceeding is not necessary," but that "defendant shall be accorded an informal hearing before the designated judge[.]" *State v. Leonardis,* 71 *N.J.* 85, 122, 363 *A.*2d 321 (1976).

We find no justification to support a different outcome in the Drug Court setting. An informal hearing before the Drug Court judge is sufficient. Importantly, in weighing the aggravating and mitigating factors relevant to the sentencing decision, our courts traditionally rely on information that was previously submitted by court staff and by the parties, as well as the arguments of counsel. *See R.* 3:21–2; *R.* 3:21–4(g). Although it is not expected that there will be testimony, counsel will have an opportunity to argue before the trial judge and make a record. Further, the judge may receive comments from other interested persons, but this is done in an informal fashion without the necessity of a plenary hearing.

We note an additional reason why we find that an informal hearing will satisfy the need to give full and fair consideration to an applicant's appeal. Prior to the hearing, the Drug Court judge will have received a considerable amount of information about the applicant through the Drug Court team's informal sharing of information. *Manual, supra,* at 28. In our view, if a plenary hearing were required with testimony and cross-examination of the team members, it might well have a negative affect and upset

the balance created by the collaborative team approach. Consistent with the team approach, defense counsel, as a member of the Drug Court team, is actively involved throughout the team's deliberative and information sharing process and is able to challenge any opinion or assertion of fact offered by a team member. *Id.* at 31. Thus, preceding the hearing of an appeal, defense counsel will have had an opportunity to influence the recommendation of other team members.

In short, we conclude that a plenary hearing in which one or more team members would testify is not required at the hearing on a Drug Court appeal. Although Drug Court judges have the discretion to permit witnesses to testify when a genuine issue of material fact needs to be resolved, an informal hearing is sufficient for the court to give full and fair consideration to the applicant's appeal.

## IV.

### A.

We turn now to address the contention of each defendant that the Drug Court judge failed to apply the correct standards for admission under the second track. In each case, the prosecutor objected to defendant's admission to the Drug Court and argued that the judge could only admit each defendant if he found the prosecutor's rejection was a gross and patent abuse of prosecutorial discretion. However, the provisions for "special probation" under track one did not apply because both defendants were charged with crimes that, if convicted, would not carry either a presumption of imprisonment under *N.J.S.A.* 2C:44–1(d) or a minimum term sentence. That is, neither Clarke nor Dolan was eligible for admission into the Drug Court program under the first track criteria. Therefore, there was no need for the Drug Court judge to refer to the abuse of discretion standard to overrule the prosecutor's decision. More importantly, it is not clear from the record whether or not the trial court applied that same abuse of

discretion standard in considering the prosecutor's objection under the second track analysis, which would be error.

### B.

■ Clarke argues that the Drug Court erred in applying *Soricelli*, to conclude he was ineligible for the Drug Court program merely because he stopped using crack cocaine without treatment and did not still have a drug dependency at the time of sentencing. In discussing the second track, the Drug Court judge declared that a defendant must be drug dependent at the time of sentencing and cited *Soricelli, supra*, 156 *N.J.* at 537–38, 722 *A.*2d 95. The judge also noted that during the substance abuse evaluation, Clarke stated that he stopped using drugs without assistance and therefore, "a defendant who has cured this dependency prior to sentencing must go to prison."

In *Soricelli, supra*, we held that the "special probation" set forth in *N.J.S.A.* 2C:35–14 was not available to "offenders such as [the] defendant who, based on the anecdotal evidence before the sentencing court, appears to have successfully overcome his addiction as a result of residential and out-patient treatment over an extended period." 156 *N.J.* at 538, 722 *A.*2d 95. We noted that "if [the] defendant's drug rehabilitation were incomplete or less successful he would appear to be an appropriate candidate for a ... sentence ... pursuant to *N.J.S.A.* 2C:35–14." *Ibid.* However, we invited the Legislature to amend the statute to allow "special probation" for offenders who were totally rehabilitated at the time of sentencing. *Ibid.*

The Legislature subsequently amended the definition of a "drug or alcohol dependent person" in *N.J.S.A.* 2C:35–2. *L.* 1999, *c.* 376, § 1. Following the amendment, a drug or alcohol dependent person is defined as "a person who as a result of using a controlled dangerous substance or controlled substance analog or alcohol *has been* in a state of psychic or physical dependence, or both, arising from the use of that controlled dangerous substance or controlled substance analog or alcohol on a continuous or repetitive basis."

*N.J.S.A.* 2C:35–2 (emphasis added). The amendment substituted "has been" for "who is." *L.* 1999, *c.* 376, § 1.

The accompanying statement of the Senate Law and Public Safety Committee explained the change's effect.

The committee amended the bill to clarify that a person *who is drug or alcohol dependent at the time of the commission of the offense would be deemed to be a drug or alcohol dependent person at the time of sentencing,* even though the person has made progress toward rehabilitation while awaiting disposition of the charges and is no longer actively using a controlled dangerous substance, controlled dangerous substance analog or alcohol. It is the committee's understanding that this amendment is necessary because the disease of drug or alcohol dependence is a chronic, relapsing disorder.

[S. Law and Public Safety Comm., *Statement to S., No. 1253,* 208th Leg.2 (N.J. Jan. 25, 1999) (emphasis added).]

The statement makes clear that the Committee intended that the definition of a drug dependent person includes an individual who was drug or alcohol dependent at the time of the offense. Thus, even if an offender achieved some level of success in his or her rehabilitation efforts by the time of sentencing, or more pertinent to this matter at the time of seeking admission to the Drug Court program, the offender may still be found drug or alcohol dependent. *See Manual, supra,* at 16–17.

Unfortunately, the Drug Court judge relied on *Soricelli,* and not the amended statutory definition of a drug dependent person in holding that defendant must be drug dependent at the "time of sentencing." Consequently, the judge denied Clarke's application to the Drug Court program in part due to an incorrect interpretation of our law.

We note also that the judge did not address the substance abuse evaluator's findings that Clarke's cocaine dependence was in "early full remission" and that "[t]here is a high likelihood that ... Clarke will relapse to [the] use of drugs without close out-patient monitoring and structured therapeutic services, as indicated by his lack of awareness of relapse triggers, difficulty in coping or in postponing immediate gratification or ambivalence toward treatment[,]" and her recommendation that defendant "enter and complete a Level II.5—Partial hospitalization treatment program to

continue abstinence and begin a program of recovery." Even though the judge may ultimately disagree with the recommendation in the evaluator's report, the reasons for doing so should be made clear in the record. However, because the trial judge did not consider whether defendant was drug dependent at the time of the offense and did not address the evidence of Clarke's need for a treatment program, we are not confident that Clarke's application received full and fair consideration.

To be sure, the judge found three aggravating factors—(1) the risk defendant will commit another offense, (2) the extent of Clarke's criminal record and the seriousness of the offenses for which he has been convicted, and (3) deterrence—and found no mitigating factors. The judge concluded that the aggravating factors substantially outweighed the non-existent mitigating factors. Consequently, the judge found that a probationary sentence would not be appropriate for Clarke. That finding would, of course, make Clarke ineligible for admission to the Drug Court program. However, the Drug Court judge's findings of the aggravating and mitigating factors may have been adversely influenced by the judge's failure to appreciate that Clarke's drug dependency at the time of the offense was an important factor. In our view, the combination of errors outlined above deprived Clarke of "full and fair consideration of his application." *N.J.S.A.* 2C:43–12(f). We remand to the Drug Court for further consideration of Clarke's application consistent with the views expressed herein.

C.

 Dolan argues that the Drug Court erred by not considering his substance abuse evaluation at all. We agree.

A fair deliberative process requires that the Drug Court judge consider all of the relevant information available. The completed substance abuse evaluation of Dolan illustrates that Dolan was interviewed on February 4, 2009, and the report was dated March 3, 2009. The hearing on Dolan's appeal occurred on April 6, 2009

and the judge's written decision was issued on April 7, 2009. Thus, a completed substance abuse evaluation of Dolan was available at the time of Dolan's Drug Court hearing.

However, it does not appear that the Drug Court judge was aware of the substance abuse evaluator's recommendation for in-patient drug treatment because it was not referred to in the judge's extensive written opinion. Without considering the full measure of Dolan's substance abuse history and the written recommendation of the substance abuse evaluator, the trial court could not have given full and fair consideration of Dolan's appeal.

Although a Drug Court judge is not bound by a substance abuse evaluator's recommendation for in-patient drug treatment, the evaluation is a critical component of a decision to grant or deny admission into the Drug Court program. The substance abuse evaluator's recommendation can assist in the judge's consideration of a defendant's need for treatment and the probable effect of any addiction on future criminal behavior. A remand is necessary for the Drug Court judge to consider the substance abuse evaluator's report. Moreover, to avoid any confusion, on remand it should be clear from the record that the gross and patent abuse of prosecutorial discretion standard is not applied in the judge's consideration of Dolan's eligibility for admission to Drug Court under the second track.

## V.

The judgment in each case is affirmed in part, and we remand for reconsideration consistent with the views expressed herein.

*For affirmance in part and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—7.

*Opposed*—None.