60 A.3d 806

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. DARRYL BISHOP, DEFENDANT–APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
WILBERTO TORRES, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 12, 2012—Decided February 27, 2013.

534

Before Judges SIMONELLI, KOBLITZ and LISA.

*John Douard,* Assistant Deputy Public Defender, argued the cause for appellants Darryl Bishop and Wilberto Torres (*Joseph E. Krakora,* Public Defender, attorney; *Mr. Douard,* of counsel and on the briefs).

*Joie Piderit,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*Bruce J. Kaplan,* Middlesex County Prosecutor, attorney; *Ms. Piderit,* of counsel and on the briefs).

*Jeffrey S. Chiesa,* Attorney General, attorney for amicus curiae Attorney General of the State of New Jersey in A–0048–11 and A–1399–11 (*Jennifer E. Kmieciak,* Deputy Attorney General, of counsel and on the brief).

*Pinilis Halpern, LLP,* attorneys for amicus curiae Association of Criminal Defense Lawyers of New Jersey in A–0048–11 and A–1399–11 (*Jeffrey S. Mandel,* of counsel and on the brief).

The opinion of the court was delivered by

LISA, J.A.D. (retired and temporarily assigned on recall).

These cases [1] require determination of the principles applicable to resentencing a defendant whose special probation pursuant to *N.J.S.A.* 2C:35–14 has been permanently revoked.[2] Defendants Darryl Bishop and Wilberto Torres argue that the trial court erred in resentencing them for their underlying convictions of possession with intent to distribute a controlled dangerous substance within one thousand feet of school property, *N.J.S.A.* 2C:35–7, to extended terms of imprisonment with a parole disqualifier pursuant to *N.J.S.A.* 2C:43–6f. Relying on cases applicable to resentencing after a revocation of "regular" probation pursuant to *N.J.S.A.* 2C:45–3b, defendants contend that the sentences they received are impermissible because the prosecutor, by consenting to their initial special probation sentence, irrevocably waived the right to seek such a sentence upon permanent revocation of special probation.

We disagree with defendants. We hold that mandatory periods of parole ineligibility and mandatory extended term provisions that existed at the time of original sentencing survive during the term of special probation and remain applicable at the time of resentencing upon permanent revocation of special probation. Accordingly, we affirm.

## I.

Both defendants pled guilty to possession with intent to distribute heroin within one thousand feet of school property, *N.J.S.A.* 2C:35–7. Both defendants had been previously convicted of drug

---

[1] These appeals were calendared back-to-back, and we now consolidate them for disposition in this opinion.

[2] These cases were initially argued on an excessive sentencing calendar pursuant to *Rule* 2:9–11, after which we issued orders directing full briefing and placement on a plenary calendar. After argument on the plenary calendar, we invited the Attorney General and the Association of Criminal Defense Lawyers of New Jersey to file amicus curiae briefs.

offenses that rendered them eligible for mandatory extended terms, if requested by the prosecutor, pursuant to *N.J.S.A.* 2C:43–6f.

Pursuant to plea agreements in both cases, the prosecutor consented to defendants being sentenced to Drug Court, more particularly, to special probation pursuant to *N.J.S.A.* 2C:35–14a, for which defendants met all eligibility criteria. Each plea agreement recommended a sentence of special probation, but also provided for an "alternate sentence" of seven years imprisonment with a forty-two-month parole disqualifier. This constituted an extended term sentence in each case pursuant to *N.J.S.A.* 2C:43–6f, calculated under the *Revised Attorney General Guidelines For Negotiating Cases Under N.J.S.A. 2C:35–12*, July 15, 2004 (*Attorney General Guidelines* ).

After serving a portion of their special probation terms, each defendant pled guilty to multiple and serious probation violations. Neither defendant disputed that his probation should be permanently revoked, nor does either defendant now contend that revocation was improper.

At their violation of probation (VOP) sentencings, the prosecutor sought imposition of the seven-year sentences with forty-two-month parole disqualifiers as alternatively provided for in the plea agreements. Bishop asked the court to consider imposing a five-year sentence with a three-year parole disqualifier, or to consider waiving the parole disqualifier. Torres requested a seven-year sentence with a thirty-month parole disqualifier. In each case, the court reassessed the applicable aggravating and mitigating factors. The court found in each case the presence of the same three aggravating factors that existed at the time of original sentencing, namely (3) the risk of another offense, (6) defendant's prior record, and (9) the need for deterrence; the court found no mitigating factors present. *See N.J.S.A.* 2C:44–1a and b. Finding a substantial preponderance of aggravating factors as to each defendant, the court sentenced Bishop to seven years imprisonment with a forty-two-month parole disqualifier, and sentenced

Torres to seven years imprisonment with a thirty-six-month parole disqualifier.

Defendants now contend that their VOP sentences constituted an abuse of discretion and violated the sentencing principles laid down in *State v. Baylass,* 114 *N.J.* 169, 553 *A.*2d 326 (1989), *State v. Lagares,* 127 *N.J.* 20, 601 *A.*2d 698 (1992), *State v. Vasquez,* 129 *N.J.* 189, 609 *A.*2d 29 (1992), and *State v. Peters,* 129 *N.J.* 210, 609 *A.*2d 40 (1992). Defendants argue that, in accordance with the principles prescribed in these cases, their VOP sentences should have been no more than four years imprisonment with no parole disqualifier.

In advancing their argument, defendants begin with the proposition that "there is no such thing as an agreed-upon 'alternative sentence' in the event of a VOP." They further argue that by consenting to their entry into special probation, the prosecutor irrevocably waived the right to seek an extended term sentence pursuant to *N.J.S.A.* 2C:43–6f, should a VOP occur. In defendants' view, the alternative presented to them in their plea agreements at the time of their original pleas gave them the option of choosing either special probation or a state prison sentence not to exceed seven years with a forty-two-month parole disqualifier. They argue that once they made their choice and were sentenced, the other alternative was no longer of any effect and, having chosen special probation, the prison alternative could not be rekindled upon a VOP. Thus, they contend, at their VOP sentencings, the prosecutor lacked the authority to seek an extended term sentence with a parole disqualifier, and the court lacked the authority to impose such a sentence.[3]

---

[3] At oral argument, defense counsel apparently conceded that a discretionary period of parole ineligibility of up to three years might have been legally authorized, presumably as part of an ordinary term sentence for the school zone offenses, under the provisions of *N.J.S.A.* 2C:35–7. *See Vasquez, supra,* 129 *N.J.* at 206, 609 *A.*2d 29. Defense counsel nevertheless adhered to his primary position that no minimum period of parole ineligibility was warranted in these cases and that imposition of such a term would have constituted an abuse of

## II.

We begin our analysis by distinguishing between regular probation and special probation. Regular probation has long been an authorized disposition under the New Jersey Code of Criminal Justice (Code), *N.J.S.A.* 2C:1–1 to 2C:104–9. *See N.J.S.A.* 2C:43–2b(2). Regular probation is a non-state prison sentence (although it can be conditioned upon serving not more than 364 days in a county jail). *Ibid.*

■ In general terms, a regular probationary sentence is typically imposed for third or fourth-degree offenses which do not contain a specific provision requiring a state prison sentence. For such offenders with no prior criminal record, there is a presumption against state prison, and for such offenders with a prior record, there is no presumption either for or against state prison. *N.J.S.A.* 2C:44–1e; *State v. Meyer,* 192 *N.J.* 421, 433 n. 5, 930 *A.*2d 428 (2007). Where there is no presumption either for or against state prison, the court must weigh aggravating and mitigating factors enumerated in *N.J.S.A.* 2C:44–1a and b in making the "in-out" decision, that is, whether to impose a state prison sentence or a probationary sentence. *State v. Clarke,* 203 *N.J.* 166, 176, 1 *A.*3d 607 (2010); *Meyer, supra,* 192 *N.J.* at 433 n. 5, 930 *A.*2d 428.

■ For crimes of the first or second degree, there is a presumption of imprisonment, *N.J.S.A.* 2C:44–1d, which is rarely overcome. *State v. Soricelli,* 156 *N.J.* 525, 532–34, 722 *A.*2d 95 (1999). Thus, for such offenders, a regular probationary sentence is almost never appropriate under the Code's general sentencing provisions.

---

discretion. Our disposition of this appeal does not require independent analysis of this issue because the primary focus is on the mandatory extended term pursuant to *N.J.S.A.* 2C:43–6f, which includes by its terms a minimum period of parole ineligibility of at least three years, thereby subsuming the three year minimum period of parole ineligibility prescribed by *N.J.S.A.* 2C:35–7.

Special probation is another authorized disposition under the Code. It is not contained in *N.J.S.A.* 2C:43–2b(2), but in *N.J.S.A.* 2C:35–14. The term "special probation" first appeared in that section when it was amended in 1999. *Meyer, supra,* 192 *N.J.* at 434, 930 *A.*2d 428. As we will explain, that amendment, together with subsequent amendments, set special probation apart from regular probation, rendering each a separate and distinct sentencing disposition authorized by the Code.

Special probation is designed to divert otherwise prison-bound offenders into an intensive and highly specialized form of probation designed to "address in a new and innovative way the problem of drug-dependent offenders caught in a never-ending cycle of involvement in the criminal justice system." *Id.* at 434–35, 930 *A.*2d 428. Thus, the Legislature created special probation as a disposition aimed specifically at prison-bound offenders, who would not be eligible for regular probation.

We recognize, of course, that drug dependent offenders sentenced to regular probation may also be admitted to Drug Court under a separate track than those admitted on the special probation track prescribed by *N.J.S.A.* 2C:35–14. *Ibid.* This opinion does not deal with those admitted to Drug Court under the regular probation track; it deals only with offenders sentenced to special probation under *N.J.S.A.* 2C:35–14, whose probation is subsequently permanently revoked.

In the immediate aftermath of the Supreme Court's 2007 decision in *Meyer,* the Legislature again amended *N.J.S.A.* 2C:35–14. Among other things, the amendment gave legislative approval to the *Meyer* holding, making clear that although Drug Court is available under two tracks (special probation and regular probation), the two are separate and distinct. Indeed, the 2008 amendment added the following to the beginning of *N.J.S.A.* 2C:35–14a:

  a. Any person who is ineligible for probation due to a conviction for a crime which is subject to a presumption of incarceration or a mandatory minimum period of parole ineligibility may be sentenced to a term of special probation in accordance with this section, and may not apply for drug and alcohol treatment pursuant to N.J.S. 2C:45–1 [specifying the conditions of regular probation]. Nothing in this

section shall be construed to prohibit a person who is eligible for probation in accordance with N.J.S. 2C:45–1 due to a conviction for an offense which is not subject to a presumption of incarceration or a mandatory minimum period of parole ineligibility from applying for drug or alcohol treatment as a condition of probation pursuant to N.J.S. 2C:45–1.

[*L.* 2008, *c.* 15, § 1, eff. Aug. 1, 2008.]

Thus, stated in very broad terms, offenders sentenced to regular probation are not necessarily prison bound, based upon the nature and seriousness of their crimes and the general sentencing provisions of the Code. On the other hand, offenders sentenced to special probation are prison bound because their offenses, deemed more serious in the Code, carry a mandatory or presumptive term of imprisonment. Their eligibility for this form of non-prison sentence is not determined by weighing aggravating and mitigating factors as is the case with regular probation, but by reference to the enumerated statutory requirements listed in *N.J.S.A.* 2C:35–14. *Clarke, supra,* 203 *N.J.* at 175, 1 *A.*3d 607. It is logical that in light of the vastly different criteria governing admission to these separate forms of probation, the consequences of resentencing upon revocation of probation should also differ.

### III.

The Code provides as follows for resentencing upon revocation of regular probation:

When the court revokes ... probation, it may impose on the defendant any sentence that might have been imposed originally for the offense of which he was convicted.

[*N.J.S.A.* 2C:45–3b.]

As we previously stated, defendants rely upon the Supreme Court's interpretation of that provision as the basis for their argument.

In *Baylass,* the Court held that upon resentencing after a VOP, the court must consider the aggravating factors that existed at the time of the original sentence, and weigh and balance them against mitigating factors as affected by probation violations. *Baylass, supra,* 114 *N.J.* at 178, 553 *A.*2d 326. Because the weighing of

aggravating and mitigating factors at the time of original sentencing supported a probationary (rather than prison) sentence, the Court further held that it would be a rare case in which the post-VOP balancing of original aggravating factors and surviving mitigating factors would weigh in favor of a term of imprisonment greater than the presumptive (now midrange [4]) sentence or of a period of parole ineligibility. *Ibid.* The offenses in *Baylass* were three counts of fourth-degree forgery, *N.J.S.A.* 2C:21–1a. *Id.* at 171, 553 *A.*2d 326. That offense does not provide for any mandatory minimum period of parole ineligibility. Therefore, the Court's analysis pertained to the possibility of a discretionary minimum period of parole ineligibility pursuant to *N.J.S.A.* 2C:43–6b. *Id.* at 178, 553 *A.*2d 326.

Three years after *Baylass*, the Court considered the constitutionality of *N.J.S.A.* 2C:43–6f. *Lagares, supra,* 127 *N.J.* at 23, 601 *A.*2d 698. In *Lagares*, the Court was not dealing with a VOP sentence, but the initial sentence of a defendant convicted of third-degree distribution of a controlled dangerous substance, *N.J.S.A.* 2C:35–5, who, because of a prior drug conviction, was eligible for extended term sentencing, if requested by the prosecutor, pursuant to *N.J.S.A.* 2C:43–6f. *Id.* at 24, 601 *A.*2d 698. The Court held that section 6f could withstand separation of powers and due process challenges only if interpreted to require the adoption of uniform statewide guidelines to govern the exercise of prosecutorial discretion in choosing whether or not to request imposition of an extended term, which, once requested, is mandatory for the court. *Id.* at 32–33, 601 *A.*2d 698. The Court noted that "[t]hose guidelines should reflect the legislative intent to make extended sentencing of repeat drug offenders the norm rather than the exception." *Id.* at 32, 601 *A.*2d 698.

Although *Lagares* did not involve a VOP sentencing, its holding and rationale, along with the holding and rationale in *Baylass*, provided much of the underpinning for the Court's decision a few

---

[4] *See State v. Natale*, 184 *N.J.* 458, 488, 878 A.2d 724 (2005).

months later in the remaining cases upon which defendants rely, *Vasquez* and its companion case, *Peters*.[5]

In *Vasquez*, the defendant pled guilty to a school zone offense, namely possession with intent to distribute cocaine within one thousand feet of school property, *N.J.S.A.* 2C:35–7. *Vasquez, supra*, 129 *N.J.* at 192, 609 *A.*2d 29. Pursuant to a negotiated plea agreement, the prosecutor waived imposition of the mandatory three-year parole disqualifier prescribed for that offense and recommended a probationary sentence, but the plea agreement also provided that if the defendant violated probation, the prosecutor would withdraw the waiver and seek resentencing with the mandatory parole disqualifier. *Ibid.*

The defendant violated probation, and on resentencing the court concluded it had no discretion to refrain from imposing the statutorily mandated parole disqualifier in light of the plea agreement provision, and sentenced him to four years imprisonment with a three-year parole disqualifier. *Id.* at 193, 609 *A.*2d 29. The Supreme Court was therefore confronted with the issue of "whether on resentencing following a violation of probation the court is compelled by the sentencing statute to impose the period of parole ineligibility and whether the prosecutor, having originally waived the parole disqualifier, has the authority at resentencing to demand the imposition of the period of parole ineligibility." *Id.* at 192, 609 *A.*2d 29.

The Court first disposed of the separation of powers challenge to *N.J.S.A.* 2C:35–12 by applying its rationale and holding in *Lagares* and reaching the same result. *Id.* at 195–97, 609 *A.*2d 29. Thus, the Court held that to render constitutional *N.J.S.A.* 2C:35–12, authorizing prosecutorial waiver of minimum periods of parole ineligibility, uniform guidelines were needed to regulate the exercise of prosecutorial discretion. *Ibid.* The Court then turned to the principles that should guide determination of an appropriate

---

[5] We will confine our references to *Vasquez* because the Court's relevant analysis and holding was the same in both cases.

VOP sentence when the underlying offense, a school zone offense, provides for a mandatory parole disqualifier.

The Court began by quoting the statutory provision governing resentencing after a VOP, namely that the court " 'may impose on the defendant any sentence that might have been imposed originally for the offense for which he [or she] was convicted.' " *Id.* at 197, 609 *A.*2d 29 (quoting *N.J.S.A.* 2C:45–3b). Thus the Court applied the same resentencing standard as in *Baylass,* applicable to all resentencing after revocation of regular probation. Unlike in *Baylass,* the analysis in *Vasquez* was complicated by the statutory parole disqualifier prescribed for the underlying offense. Therefore, the Court was required to analyze the interrelationship between *N.J.S.A.* 2C:35–7 (providing for the mandatory parole disqualifier), and *N.J.S.A.* 2C:35–12 (authorizing prosecutorial waiver of the parole disqualifier). *Id.* at 197–200, 609 *A.*2d 29.

The Court concluded that, because prosecutors are authorized by section 12 to waive the parole disqualifier in section 7, "section 7 sentencing is not 'mandatory,' at least in the typical or conventional use of mandatory sentencing." *Id.* at 199, 609 *A.*2d 29. The Court further reasoned that once waived, the parole disqualifier under section 7 is no longer mandatory for purposes of VOP resentencing and that prosecutors retain no sentencing authority on resentencing regarding imposition of a parole disqualifier. *Id.* at 200, 609 *A.*2d 29.

Because it was construing a penal statute, the Court felt constrained to construe it strictly in the absence of express and clear statutory language to the contrary. *Id.* at 200–01, 609 *A.*2d 29. The Court concluded:

> Thus, unless the Legislature has made clear its intent to have the mandatory parole disqualifier apply at violation of probation sentencing, the court is not justified in imputing that intent to the Legislature. We are satisfied that it has not. The mandatory term of section 7 is itself not truly mandatory because it may be waived. Moreover, section 12, which authorizes the waiver of the mandatory term, does so only in the context of the original sentencing. That waiver may occur as part of a plea agreement or a post-conviction sentencing agreement. However, the legislation does not expressly mandate that a parole disqualifier be

applied at the resentencing stage or authorize the exercise by the prosecution of any power to waive or request such a parole disqualifier at that stage.

[*Id.* at 201, 609 *A.*2d 29.]

The Court thus held that the *Baylass* framework was applicable to the resentencing process and, in the absence of express statutory authority, the Court was unable to infer a legislative intent to impose an absolute mandatory parole disqualifier on resentencing for a VOP based on a school zone offense. *Id.* at 201–02, 609 *A.*2d 29.

However, recognizing the material difference between the penalties prescribed for the underlying offenses in *Baylass* and in *Vasquez*, the Court determined that on resentencing after a VOP for a school zone offense the court must follow the *Baylass* principles, "subject, however, to a discretionary authority to impose a period of parole ineligibility under appropriate circumstances and based on adequate findings." *Id.* at 205, 609 *A.*2d 29. For such cases, in which the underlying offense contained a mandatory, but waiveable, parole disqualifier, the Court summarized the modified *Baylass* rule as follows:

Hence, the sentencing court, following a violation of probation, cannot return to a sentence more stringent than was appropriate originally except in the rare case. Nonetheless, although we reject the State's position that on resentencing for violation of probation the imposition of a period of parole ineligibility is mandatory in the absence of the prosecutor's waiver, we hold that a period of parole ineligibility may be imposed in conjunction with the imposition of a presumptive custodial term as a matter of judicial discretion.

[*Id.* at 206, 609 *A.*2d 29.]

## IV.

When the decisions in *Baylass, Lagares, Vasquez,* and *Peters* were rendered, between 1989 and 1992, *N.J.S.A.* 2C:35–14 provided for a very limited rehabilitation program for drug-dependent prison-bound offenders who could, under prescribed circumstances, be placed on "probation," subject to appropriate and reasonable "terms and conditions as may be required by the court and by law, pursuant to *N.J.S.A.* 2C:45–1." *L.* 1987, *c.* 106, § 1, operative July 9, 1987. Thus, a defendant qualifying under this

section could be admitted to regular probation. As we have previously stated, the concept of special probation was not introduced until the 1999 amendment. Importantly, under the pre-1999 version, *N.J.S.A.* 2C:35–14d provided that upon revocation of probation the court was empowered to "impose on the defendant any sentence that might have been imposed originally for the offense of which he was convicted." *L.* 1987, *c.* 106, § 1, operative July 9, 1987. This is precisely the same language that was contained then, and continues to be contained now, in *N.J.S.A.* 2C:45–3b, governing a court's sentencing authority for a violation of regular probation.

In the 1999 amendments to *N.J.S.A.* 2C:35–14, the Legislature, presumably being cognizant of these decisions, enacted a provision that changed the sentencing authority of courts for resentencing upon permanent revocation of special probation. Section d, which contained the identical sentencing provision that existed for regular probation, was deleted in its entirety. *L.* 1999, *c.* 376, § 2, eff. Jan. 14, 2000. It was replaced by a new section, *N.J.S.A.* 2C:35–14f(4), which currently remains in effect and provides, in relevant part:

> (4) If the court permanently revokes the person's special probation pursuant to this subsection, *the court shall impose any sentence that might have been imposed, or that would have been required to be imposed, originally for the offense for which the person was convicted or adjudicated delinquent.* The court shall conduct a de novo review of any aggravating and mitigating factors present at the time of both original sentencing and resentencing.
>
> [*N.J.S.A.* 2C:35–14f(4) (emphasis added).]

■■■ Our task is to interpret this new section. In doing so, we must ascertain the intent of the Legislature in enacting it. *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). The best indicator of that intent is the statutory language itself, to which courts should ascribe its ordinary meaning and significance. *Ibid.* In doing so, the words should be read in context with related provisions to give sense to the legislation as a whole. *Ibid.* If the language is clear and unambiguous, and susceptible to only one interpretation, no further inquiry should be made. *Ibid.* However, if there is ambiguity in the language that could lead to more than

one plausible interpretation, courts may consider extrinsic evidence, including legislative history, committee reports, and contemporaneous construction. *Id.* at 492–93, 874 *A.*2d 1039. Courts may also consider extrinsic evidence if a plain reading would lead to an absurd result or if the overall statutory scheme is at odds with the plain language. *Id.* at 493, 874 *A.*2d 1039.

Applying these principles, we conclude that this statutory change reflects legislative intent to provide a separate VOP resentencing regime for special probation than that which had previously existed and continues to exist for regular probation. It constitutes a marked departure from the regular probation standard and provides express statutory direction preserving all sentencing provisions available at the original sentencing in the event of revocation of special probation. This new provision comports with the fundamental difference in admission criteria to special probation as opposed to regular probation.

We conclude that the replacement of the former *N.J.S.A.* 2C:35–14d with the new *N.J.S.A.* 2C:35–14f(4) was a substantive change, and not a mere shift in verbiage. We base our conclusion on the plain language of the statute. To the extent that any ambiguity might exist, our conclusion is bolstered by several factors.

First, the Legislature left untouched the resentencing provision for regular probation in *N.J.S.A.* 2C:45–3b. This indicates a legislative intent to leave intact the *Baylass* principles for resentencing upon revocation of regular probation, but changing the principles applicable to resentencing upon revocation of special probation.

Second, as the Court explained in *Baylass,* it would only be a rare case in which a non-prison-bound offender admitted to regular probation should, upon revocation of probation, receive more than a mid-range flat sentence. That analysis is based upon the nature and seriousness of the underlying offense and the identification at the original sentencing of aggravating and mitigating factors, in which a preponderance of mitigating factors would have

weighed in favor of choosing probation over state prison as the original sentence. Thus, even if, as a result of the VOP, some or all of the mitigating factors were diminished in weight or eliminated, the rebalancing of original aggravating and remaining mitigating factors would not be expected to support a sentence above the mid-range or a sentence with a discretionary parole disqualifier. That analytical framework does not apply to prison-bound offenders sentenced to special probation.

Third, the carrot-and-stick approach is integral to the Drug Court concept. Prison-bound offenders are given an opportunity to be diverted from a state prison sentence if they are willing to avail themselves of the rehabilitative opportunities available in Drug Court in an effort to free themselves from the recurring cycle of drug dependency and criminal activity. The legislative history of the 1999 amendments includes the *Report to the Governor by the Attorney General on the Need to Update the Comprehensive Drug Reform Act of 1987*, December 9, 1996. That document "call[ed] for new ways to support drug court programs. One way is to provide judges with new legal tools with which to *'leverage'* addicts into treatment." *Id.* at 18 (emphasis added). The legislation that followed created special probation, as distinguished from regular probation, and established the new resentencing provision applicable upon revocation of special probation.

This evidences an awareness by the Legislature that strong incentives would be required to keep special probationers on the often difficult path to rehabilitation. It is well accepted that relapse is part of rehabilitation. Indeed, echoing the same theme as in the Attorney General's report, the 1999 legislation includes a similar reference in its provisions dealing with intermediate sanctions on a special probationer. When violations occur, courts are directed to "consider the recommendations of the treatment provider with respect to the likelihood that [thirty days to six months] confinement would serve to *motivate* the person to make satisfactory progress in treatment once special probation is reinstated." *N.J.S.A.* 2C:35–14g (emphasis added).

The *Attorney General Guidelines* accord with these concerns. They authorize prosecutors to "tender a 'conditional' offer under these Guidelines, affording the defendant the option to choose either the *Brimage*[6] offer or to be sentenced to rehabilitative treatment pursuant to *N.J.S.A.* 2C:35–14." *Attorney General Guidelines, supra,* § 3.13, at 22. This is for the purpose of "encouraging prosecutors to empower sentencing courts to use the leverage of the criminal justice system to convince addicted offenders to accept the rigors of clinically appropriate treatment interventions." *Ibid.* The *Attorney General Guidelines* further elaborate that special probation "is designed to address the concern that the prospect of a probationary or county jail sentence may be insufficient to provide the sentencing court with the leverage necessary to convince an addicted defendant to overcome denial and accept the rigors of clinically-appropriate treatment, such as the treatment provided pursuant to *N.J.S.A.* 2C:35–14 (treatment in lieu of imprisonment)." *Id.* at § 6.5.4, at 47.

Although the *Attorney General Guidelines* are silent regarding resentencing upon revocation of special probation, the foregoing provisions assist and support our analysis. The ultimate motivation or leverage, a tool needed to enable Drug Courts to operate effectively, is the threat of the substantial sentence that would have been imposed originally if the defendant were not admitted to Drug Court through special probation.

Fourth, uniformity in sentencing is a fundamental goal of the Code. *Brimage, supra,* 153 *N.J.* at 19–22, 706 *A.*2d 1096. Indeed, the *Attorney General Guidelines,* often referred to as the "*Brimage* Guidelines," were promulgated at the direction of the Supreme Court in *Brimage* to assure uniformity. *Id.* at 23, 706 *A.*2d 1096. Our interpretation of *N.J.S.A.* 2C:35–14f(4) advances the fundamental goal of sentencing uniformity. Prison-bound offenders who meet the eligibility requirements of *N.J.S.A.* 2C:35–14 are afforded an opportunity at rehabilitation through Drug Court.

---

[6] *State v. Brimage,* 153 *N.J.* 1, 706 *A.*2d 1096 (1998).

However, for those who do not successfully avail themselves of the opportunity, the sentencing consequences should be the same as if the opportunity had not been extended to them in the first place. We do not think the Legislature established a comprehensive system to divert prison-bound offenders in the hopes of their rehabilitation, only to allow those who fail to receive a much more lenient sentence than similarly situated offenders who are not given the opportunity. Such an interpretation would invite manipulation by offenders to get into special probation, knowing that their admission would entitle them to the windfall of a reduced sentence upon revocation.

Fifth, in 2012, the Legislature again amended *N.J.S.A.* 2C:35–14. Among the changes was the deletion of subsection c, which gave prosecutors the right to object to special probation, which could be overridden only upon a judicial finding of a gross and patent abuse of prosecutorial discretion. *L.* 2012, *c.* 23, § 5, eff. Jan. 19, 2013. Thus, in its present form, the consent of the prosecutor is no longer required for admission to special probation. Accordingly, the entire premise of defendants' waiver argument is no longer viable.

We do not deem this most recent amendment as intended to effect any change in the sentencing standard applicable upon revocation of special probation. The overall purpose of the 2012 amendment was to reduce eligibility requirements for admission to special probation, to compel admission for qualified offenders, and to expand the Drug Court program to all counties throughout the state. Indeed, the amendment left section 14f(4) unchanged, making even more clear that section 14 operates as a comprehensive stand-alone disposition scheme that is independent of *N.J.S.A.* 2C:35–12.

Finally, inclusion of an "alternative offer" or "alternative sentence" is expressly provided for in the *Manual for Operation of Adult Drug Courts in New Jersey,* July 22, 2002 (*Drug Court Manual* ), approved by the Judicial Council, and recognized by our Supreme Court as an authoritative source for the operation of the

Drug Court program. *Meyer, supra,* 192 *N.J.* at 431, 930 *A.*2d 428. The *Drug Court Manual* prescribes the practices and procedures to be used in Drug Court. *Clarke, supra,* 203 *N.J.* at 174, 1 *A.*3d 607. Of course, the judicial branch cannot, through an approved manual or otherwise, create a sentencing disposition not authorized by the Legislature in the Code. *Meyer, supra,* 192 *N.J.* at 435, 930 *A.*2d 428. We suggest no such thing. However, the *Drug Court Manual* provides further confirmation of our interpretation of the statutory language authorizing disposition of an offender whose special probation is permanently revoked.

Like the *Attorney General Guidelines,* the *Drug Court Manual* contains no specific provisions pertaining to resentencing upon revocation of special probation. However, it contains provisions such as the following that support our decision in this case:

> Prison-bound cases are defined as defendants who, but for the drug court program, would be sentenced to a term of imprisonment in a New Jersey state prison. These offenders must meet all other eligibility criteria. The plea agreement in these cases must clearly indicate that the defendant has been given an alternative offer and must set forth the state prison sentence that was being offered as the alternative to the drug court program, e.g. Drug Court participation or three years in New Jersey State Prison.
>
> [*Drug Court Manual, supra,* at 9.]

> If an applicant is found both legally and clinically acceptable for the drug court program, a formal plea bargain should therefore be offered to the applicant defendant which identifies drug court participation as an alternative sentence. [*Id.* at 23.]

The plea agreements in these cases complied with these provisions. Without dispute, both defendants were fully informed and expressed their understanding that, if they violated special probation, their probation could be permanently revoked, in which case they would be subject to a sentence not exceeding the *Brimage* alternative of seven years imprisonment with a forty-two-month parole disqualifier. This was not an automatic agreed-upon sentence, as defendants contend, and it did not deprive the court of its ultimate sentencing authority. The court had the authority to impose any lawful sentence not to exceed that recommended as an alternative in the plea agreement. In these cases, the sentencing range was five years with a three-year parole disqualifier at the

low end (the lowest available extended term, pursuant to *N.J.S.A.* 2C:43–6f and *N.J.S.A.* 2C:43–7a(4)), to seven years with a forty-two-month parole disqualifier at the high end (the *Brimage* offer). Upon reexamination of aggravating and mitigating factors, and a finding of a substantial preponderance of aggravating factors in each case, the court sentenced Bishop to seven years imprisonment with a forty-two-month parole disqualifier, and Torres to seven years imprisonment with a thirty-six-month parole disqualifier. We are satisfied that the court followed the correct sentencing guidelines and, in a reasonable exercise of discretion, imposed appropriate sentences in both cases within the permissible range.

Affirmed.