**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0082-23

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

WENDY BERMINGHAM,

 Defendant-Appellant.

_____

> Argued January 24, 2024 – Decided February 27, 2024
>
> Before Judges Vernoia and Walcott-Henderson.
>
> On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-01-0035.
>
> Stefan Van Jura, Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stefan Van Jura of counsel and on the brief).
>
> Randolph E. Mershon, III, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Randolph E. Mershon, III, of counsel and on the brief).

PER CURIAM

By leave granted, defendant Wendy Bermingham appeals from an order entered on August 1, 2023, denying her application for admission to Recovery Court over the State's objection. We discern no abuse of discretion by the court in denying the motion and affirm.

Indicted on charges of third-degree distribution of methadone, N.J.S.A. 2C:35-5(b)(3) and third-degree endangering another person, N.J.S.A. 2C:24-7.1(a)(3), defendant applied for Recovery Court.[1] The charges against defendant stem from the tragic death of her roommate from a lethal overdose of methadone[2] that was given to her by defendant.

---

[1] Effective January 1, 2022, the Drug Court Program was renamed the New Jersey Recovery Court Program to better reflect the primary goal of the program, thus, Drug Court and Recovery Court may be used interchangeably in this opinion. Admin. Off. of the Cts., Notice: Drug Court Name Change to New Jersey Recovery Court (December 28, 2021).

[2] "According to the Centers for Disease Control and Prevention, methadone maintenance treatment is 'the most effective treatment for opiate addiction[.]'" New Jersey Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 184 (2014) (quoting Ctrs. for Disease Control & Prevention, Methadone Maintenance Treatment 1 (2002), http://www.cdc.gov/idu/facts/methadonefin.pdf.).

At the time of the roommate's death, defendant was a participant in a medication-assistance treatment program (MAT).[3] Defendant and her roommate resided together at a Sayreville motel. As part of the MAT program, defendant had been prescribed methadone. On March 20, 2018, defendant obtained a daily dose of prescribed methadone from the clinic she attended as part of the MAT program. On this same date, clinic staff permitted defendant to take home an additional 120 milligram dose of methadone which was intended for her to use the following day—her daily dose for March 21, 2018. According to defendant, she was permitted to take an additional daily dose of methadone with her out of concern that she may not make it into the clinic the following day because of impending inclement weather.

During the police investigation, defendant told police that when she returned to the motel room, her roommate asked for defendant's next day's dose of methadone. Defendant also admitted to police that prior to giving her

---

[3] "The term 'medication-assisted treatment' means the use of any medications approved by the federal Food and Drug Administration to treat substance use disorders, including extended-release naltrexone, methadone, and buprenorphine, in combination with counseling and behavioral therapies, to provide a whole-patient approach to the treatment of substance use disorders." Admin. Off. of the Cts., New Jersey Statewide Recovery Court Manual at 27 (Jan. 2022) (citing N.J.S.A. 2C:35-14) (hereinafter, the 2022 Manual).

roommate the methadone, she advised her roommate that 120 milligrams of methadone is "a lot [to handle] for a person who never used it before." Nevertheless, defendant gave the methadone to her roommate who ingested it. Defendant told police that after taking the methadone, her roommate "was out of it for the remainder of the day and night," and while she was "out of it," she used her roommate's cell phone—not her own phone—to text a drug dealer to inquire about purchasing heroin for her personal use.

The next morning, defendant called 9-1-1—from her roommate's phone—to report that her roommate was not breathing. Police officers arrived to find the roommate in the hotel room she shared with defendant. The roommate was found unresponsive and lying in the bed next to defendant's, when pronounced dead.

Detective Louis Becker of the Sayreville Police Department's Criminal Investigation unit responded to the motel where he met defendant, who had previously disclosed to the 9-1-1 operator that her roommate had suffered a possible overdose. According to the police report, defendant told Detective Becker that she had been with her roommate all night and that her roommate had ingested methadone the previous day.

A-0082-23

During the evidence collection process, officers found a black ZTE cell phone belonging to the roommate in the motel room. Police then contacted the roommate's family and obtained her spouse's consent to search the cellphone for evidence. The search of the cellphone revealed a series of text messages sent to a person referred to as "Godson." The police investigation revealed the messages were sent by defendant, not her roommate, who according to defendant was "passed out" or under the influence of the methadone defendant had provided. Police described defendant's text messages to Godson as "drug conversation or drug talk." These text messages were provided to the court in support of the State's opposition to defendant's application for Recovery Court.

A grand jury indicted defendant on two charges: third-degree distribution of methadone, N.J.S.A. 2C:35-5(b)(3) and third-degree endangering another person, N.J.S.A. 2C:24-7.1(a)(3). Following the indictment, defendant sought admittance to Recovery Court and underwent a Treatment Assessment Services for the Courts (TASC) substance abuse assessment pursuant to N.J.S.A. 2C:35-14.[4]

---

[4] N.J.S.A. 2C:35-14(a)(1) requires a Recovery Court applicant to have "undergone a professional diagnostic assessment to determine whether and to what extent the person is drug-or alcohol-dependent and would benefit from treatment." See also 2022 Manual at 20.

The TASC evaluator concluded that defendant was clinically eligible for Recovery Court and recommended intensive outpatient therapy. However, the county prosecutor recommended that defendant not be admitted into Recovery Court, citing the pending charges and "concerns about the safety of the community, and more specifically other [R]ecovery [C]ourt participants . . . ." Following the prosecutor's negative recommendation, defendant filed a motion to be admitted into Recovery Court.

After oral argument on the motion, the court accepted the recommendation of the State and issued an order and written opinion denying defendant's application. The court later filed an amplification, pursuant to Rule 2:6-2(b), wherein it provided a more expansive explanation of its reasoning and conclusion that defendant would be a danger to the community if admitted into Recovery Court.

In reaching its decision, the court determined defendant was a Track Two candidate[5] for Recovery Court and was "legally ineligible" for the program

_____

[5] Applicants to Recovery Court are placed on Track Two when the charged offense does not carry a statutory presumption of imprisonment or a mandatory term of parole ineligibility. State v. Harris, 466 N.J. Super. 502, 525 (App. Div. 2021).

based on its finding defendant is "a danger to the community, which is a legal disqualifier." The judge stated:

> Even when I consider the outpatient program [defendant] will be required to complete, I do not believe that the supervisory resources of the Recovery Court program are adequate to safely treat her in the community. She will be on the street and in a position where she can once again place someone in harm's way.

In its amplification, the court explained that its denial was "based on the unique facts of the case, not . . . on the statutory offense involved." Specifically, the court noted that it "placed great weight" on the fact that defendant "did not summon help; she summoned a drug dealer using the passed-out victim's phone."

The court also addressed defendant's "twenty-plus-year history of heroin use" and cited findings from her TASC evaluation that defendant showed "'minimal insight' about her relapse triggers . . . []despite being 'treated for drug abuse on five occasions'[] . . . making her a 'significant risk for continued use.'" Based on its assessment of the facts, including the findings of the TASC evaluator, the court determined defendant's "indifference, combined with her significant risk for continued use, suggest[ed] that allowing her into the program would place her in a position to endanger again . . . ."

A-0082-23

Defendant moved for leave to appeal the denial of her application to Recovery Court. We granted defendant's motion.

We "review a sentencing court's decision to admit or deny admission to Drug Court for an abuse of discretion." State v. Harris, 466 N.J. Super. at 533. The abuse of discretion standard essentially means "a reviewing court should not substitute its judgment if the trial court's ruling was within a range of acceptable decisions." In re Kollman, 210 N.J. 557, 577 (2012) (internal quotations and citations omitted).

For Recovery Court, "[l]egal eligibility is a threshold question that must be decided in all cases." Harris, 466 N.J. Super. at 551. "Every candidate falls under one of two distinct and mutually exclusive tracks." Ibid. "To determine legal eligibility, the trial court must first determine whether the defendant is a Track One or Track Two candidate." Ibid. "A defendant is a Track One candidate if, and only if, [they are] presently subject to the presumption of imprisonment in N.J.S.A. 2C:44-1(d) or to a mandatory period of parole ineligibility." Id. at 523 (quoting State v. Figaro, 462 N.J. Super. 564, 566 (App. Div. 2020)). "A Track One candidate can be admitted to Drug Court only if the court sentences the defendant to special probation, an alternative to imprisonment, pursuant to N.J.S.A. 2C:35-14(a)." Id. at 551. Track One

A-0082-23

candidates must meet all nine eligibility criteria for special probation set forth in N.J.S.A. 2C:35-14(a). Ibid.

"Track Two is reserved for drug dependent defendants who are not subject to the statutory presumption of imprisonment or a mandatory term of parole ineligibility." Id. at 525 (emphasis omitted). "Those defendants may be admitted to Drug Court . . . pursuant to the statutory authority of the court to impose a probationary sentence under N.J.S.A. 2C:45-1." Figaro, 462 N.J. Super. at 579.

In contrast to Track One, "[a] Track Two candidate need not satisfy the nine eligibility criteria set forth in N.J.S.A. 2C:35-14." Harris, 466 N.J. Super. at 552. In Figaro, we held that "[a] judge considering whether a Track Two applicant is a candidate for [Recovery Court] must, of course, decide whether a probationary sentence is appropriate in the first instance." 462 N.J. Super. at 579 (citing State v. Clarke, 203 N.J. 166, 176 (2010)); see also State v. Meyer, 192 N.J. 421, 433 (2007) ("so long as the Code [of Criminal Justice] authorizes the imposition of a probationary sentence, a judge may sentence an offender to Recovery Court under Track Two pursuant to N.J.S.A. 2C:45-1.").

As such, the eligibility criteria for special probation set forth in N.J.S.A. 2C:35-14(a) do not govern a Track Two candidate's admission into Recovery

Court, Figaro, 462 N.J. Super. at 577-78, rather, "[e]ligibility for entry into Drug Court via Track Two has always been governed by the Drug Court Manuals."[6] Id. at 573. The 2022 Manual states:

> A Recovery Court prosecutor can recommend a legal rejection based on Track One cases pursuant to N.J.S.A. 2C:35-14 or, if it is a Track Two case, on whether the applicant is a potential danger to the community. Danger to the community means that the supervisory resources of Recovery Court are not adequate to safely treat the defendant in the community at the appropriate level of care. The Recovery Court judge makes all final decisions about program eligibility. An applicant's acceptance into Recovery Court should be based on the defendant's clinical and legal eligibility.
>
> [2022 Manual 9-10.]

With these principles in mind, we consider whether the court abused its discretion in denying defendant admission into Recovery Court based on its determination that the benefit of supervisory resources of Recovery Court is inadequate to safely treat defendant in the community with the adequate level of care. We further acknowledge the imperative expressed in Harris that Recovery Court judges are to "serve as the gatekeepers to the program" by "linking

---

[6] The Administrative Office of the Courts (AOC) promulgated the original Drug Court Manual in 2002, which was subsequently revised in 2019 and 2020, Harris, 466 N.J. Super. at 523 n.7, and most recently, in 2022.

deserving candidates to treatment services" but also to "promot[e] public safety and ensur[e] the continued effectiveness of the program by only admitting qualified candidates." 466 N.J. Super. at 547.

Here, defendant contends she "is an ideal candidate for an intensive outpatient recovery program, as . . . recommended by the substance abuse evaluator who examined her," and the court acknowledged that she "has a severe opioid addiction and a moderate cannabis addiction . . . ." Defendant also argues that "[g]iven the success of Recovery Court, there has been a steady march towards greater inclusion." She further asserts that given the court's acknowledgment of her addiction issues, the denial of her application constitutes "an erroneous application of the law" and as a result, she seeks a remand with instructions to allow her into Recovery Court.

The State contends the trial court appropriately found defendant is a danger to the community based on her conduct that led to the roommate's death, defendant's history of opioid and cannabis use and abuse, the results of her TASC evaluation, and the prosecutor's recommendation. The State also asserts that the supervisory resources of Recovery Court are not adequate to safely treat defendant in the community at the appropriate level of care she needs. The State concurs, in all respects, with the court's determination that defendant is a danger

11

to the community, and it disputes defendant's allegation that the court abused its discretion in denying her application.

We recognize that defendant filed her brief prior to the court's amplification which was filed November 3, 2023. Even so, defendant's argument is based on the uncontroverted fact that she continues to suffer from an opioid and cannabis addiction. Her arguments, however, ignore the fact that consideration of her addiction is only part of the analysis the court must undertake to determine eligibility for admission into Recovery Court, and that the 2022 Manual also requires consideration of her potential danger to the community. See Admin. Off. of the Cts., New Jersey Statewide Recovery Court Manual at 9 (Jan. 2022) ("Danger to the community means that the supervisory resources of Recovery Court are not adequate to safely treat the defendant in the community at the appropriate level of care.").

As previously noted, Recovery Court judges must "serve as the gatekeepers to the program" by "linking deserving candidates to treatment services" and "promot[e] public safety and ensur[e] the continued effectiveness of the program by only admitting qualified candidates." 466 N.J. Super. at 547. Under Harris, courts are required to consider not only an applicant's addiction, but other criteria, including the background of the individual applicant, the

likelihood of success in the program, the viability and continued effectiveness of Recovery Court programs, and public safety in general.  Ibid.; accord 2022 Manual, at 9-10.

In reviewing the court's opinion, including its amplification filed pursuant to Rule 2:6-2(b), we note that the court properly considered whether "the supervisory resources of Recovery Court are not adequate to safely treat the defendant in the community."  2022 Manual at 9.  In addressing this issue, the court considered the unique circumstances of this case where defendant is alleged to have provided her own prescribed drug—methadone—to her roommate—whom she knew to be a drug addicted person that had not been prescribed methadone.  As the court stated, "[s]he gave a powerful drug to the victim, and we know drug distribution 'can be readily perceived to constitute conduct which causes and threatens serious harm' to others[.]" (quoting State v. Tarver, 272 N.J. Super. 414, 435 (App. Div. 1994)).

The court also emphasized that the case "goes beyond mere distribution . . . " and it placed great weight on the fact that defendant "did not summon help; [but] summoned a drug dealer using the passed-out victim's phone," from whom defendant sought to purchase drugs for her own use.  The court specifically found troubling defendant's "indifference to life," and

concluded that "[t]his indifference, combined with her significant risk for continued use, suggests that allowing her into the program would place her in a position to endanger again . . . ."

As previously stated, defendant qualifies as a Track Two candidate as she is charged with an offense that does not carry a statutory presumption of imprisonment or a mandatory term of parole ineligibility. Consistent with the 2022 Manual, the court addressed whether defendant qualifies as a deserving candidate while also considering its responsibility to promote public safety. In so doing, the court addressed whether defendant was a danger to the community and whether the supervisory resources of Recovery Court are adequate to safely treat the defendant in the community at the appropriate level of care.

Specifically, the court considered the TASC evaluation which remarked upon defendant's "twenty-plus-year history of heroin use," "'limited awareness' of the need to change," and "her 'minimal insight' about her relapse triggers" in reaching its conclusion that there is a "'significant risk for continued use.'" Based on these findings, the court determined defendant had a "continued risk of criminal behavior, as her crimes are linked to her addiction." In reaching its determination that the benefit of an intensive outpatient treatment was

14

inadequate to safely treat the defendant in the community, the court further reasoned:

> [Her] indifference, combined with her significant risk for continued use, suggests that allowing her into the program would place her in a position to endanger again, especially given the comments in the substance-abuse evaluation. Her outpatient-treatment recommendation does nothing to remove this risk, as she would be on the street, as opposed to a supervised inpatient setting.

Ultimately, the court concluded that Recovery Court and its outpatient services would place defendant "in a position to endanger again," thus, finding that the supervisory resources would be inadequate to safely treat defendant in the community. Moreover, notwithstanding defendant's arguments that the court placed great weight on the endangering charge against her and failed to consider that "there has been a steady march toward greater inclusion" into the Recovery Court program, we remain unpersuaded that the court erred in denying her admission to Recovery Court.

We conclude that in expressing its concerns about defendant's extensive history of drug dependency and her actions and inactions with respect to her former roommate and victim, the court did not solely base its decision on the nature of the endangering charge, but properly considered all of the applicable law and criteria required for Track Two candidates by the 2022 Manual,

15

specifically finding she was a potential danger to the community and that the supervisory resources of Recovery Court are inadequate to safely treat the defendant in the community at the appropriate level of care. We discern no abuse of discretion on the part of the court and conclude its findings are supported by the record and its conclusions are based on a reasoned application of the established criteria for admission into Recovery Court.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0082-23